Chickasaw County v. Pitcher *et al.*

1. **Parties: TRANSFER OF CAUSE OF ACTION.** Where, pending an action, its cause is assigned to a third party, the action may, at the discretion of the court, be continued in the name of the original party, or the assignee may be substituted in his stead.

2. **Principal and surety:** DISCHARGE OF SURETY. An extension of time to the principal under an enforcable agreement therefor, without the consent of the surety, will discharge the latter.

3. —— The acceptance by the creditor of a valid obligation payable in the future operates to suspend all rights of action on the consideration for which it is given until the time fixed for the payment of the obligation, and hence discharges the surety.

4. **Instruction:** REFUSAL OF. Ambiguous instructions may be properly refused.

5. **Verdict:** SPECIAL VERDICT. It is not erroneous for the court to refuse to submit to the jury special interrogatories which do not call for ultimate facts.

6. **Costs:** OF PRINTING. Where an appellant, in preparing an abstract of the evidence, embodies questions and answers, no costs will be allowed him, if successful, for printing the testimony in that form.

*Appeal from Blackhawk District Court.*

MONDAY, JUNE 16.

THIS action was commenced August 20, 1867, in the Bremer district court, and was afterward, by change of venue, taken to the Blackhawk district court. The suit is based on a contract made by the defendant Pitcher, with the plaintiff, whereby Pitcher agreed to build a bridge across Cedar river, at Nashau. The other defendants, Shepherd and others, became Pitcher's sureties for the performance of his contract. The plaintiff paid to Pitcher $4,000, in advance, on his contract, $1,500 of which was in a subscription made by private individuals to aid the county in building the bridge. Pitcher built the bridge, but before its entire completion it fell, from its own weight, and proved wholly worthless.

The contract between plaintiff and Pitcher was made August 7th, 1866; the bridge was to be completed on or before March 1st, 1867, and his failure was demonstrated before bringing this suit. In June, 1867, the board of supervisors of Chickasaw county appointed certain persons agents of the county to settle with Pitcher and procure a return of the money advanced to him, and in default of that to bring suit. At the January session, 1868, and after this suit was brought, the board of supervisors authorized said agents to contract with some respon-

sible party to build the bridge, " and to assign, release, set over and use the claim of the said county against John Pitcher and his bail, toward the construction thereof, at the risk and cost of the assignee." After this action of the board of supervisors, and about the 1st of April, 1868, the agents of the county contracted in writing with one Spaulding for the construction of said bridge, and in part payment therefor, agreed to assign the claim (then in suit) held by the county on John Pitcher and his sureties. But on the 19th day of March, 1868, and before the making of this contract in writing, Pitcher and Spaulding had made a contract, whereby the former agreed to give the latter the right to use and occupy the bridge piers, which the former had built, and all material of every description procured for use in the construction of the first bridge, and also to pay $1,200 with five per cent interest, on the 1st day of August, 1868, or within ten days thereafter; time being of the essence of the contract (Pitcher gave his note to Spaulding accordingly), all this upon condition that Spaulding should erect the bridge as he agreed with the county, and obtain a settlement of the action; otherwise the piers and material were to remain the property of Pitcher. Spaulding agreed that he would procure the discharge of the action, and in default thereof, all the materials obtained by Spaulding and the bridge he should build, should be the property of Pitcher; and it was further agreed that in case Pitcher should fail to pay the money as specified, the old piers and material should be forfeited to Spaulding.

By agreement in writing, between Pitcher and the plaintiff's attorney, made April 1st, 1868, the cause was continued over the April term of the court. By the terms of the contract between Spaulding and the county, the bridge was to be completed on or before September 1st, 1868. At the June session, 1868, of the board of supervisors, the agents reported to the board that the bridge had been completed by Spaulding according to his contract, and he was entitled to an assignment of the claim now pending in suit against Pitcher, etc. The bridge committee of the board of supervisors, to whom the

report of the agents was referred, after investigation, reported that they had examined the report and the bridge, and that they approved their report and indorsed their acceptance of the bridge. At the same time Spaulding executed an order in writing, directed to the attorney for plaintiff in this suit, instructing him to discharge this action.

It also appears that at the time the contract was made between Pitcher and Spaulding, the contract and the note were both left with a third person, in whose custody the order for dismissing the suit was also left, when it was afterward executed. It also appears that the note was never paid, nor any part of it.

The pleadings were such as to properly develop the foregoing facts. The defendants asked to have Spaulding made a party, which was denied. The defendants' sureties claim their discharge, by reason of the contracts whereby Pitcher was given further time for payment. There was a jury trial and a verdict for plaintiff against all the defendants for $1,430, the amount due on the note given by Pitcher to Spaulding. Both parties moved to set aside the verdict and for a new trial. Both appeal, but since the defendants first appealed, they are styled the appellants.

*B. W. Poor* for the appellants.

*Boies, Allen & Couch* for the appellee.

COLE, J.—I. The first error assigned by the defendants is in overruling the motion or application to require Spaulding

1. PARTIES; transfer of cause of action.

to be made a party, the right of action having been assigned to him. It would not have been error if the court had sustained the motion; nor was it error to overrule it. Rev. of 1860, § 2794. "No action shall abate by the transfer or assignment of any interest therein during its pendency. * * * In case of any transfer of interest, the action may be continued in the name of the original party, or the court may allow the person to whom

the transfer or assignment is made to be substituted in the action, proper orders being made as to security for costs."

II. The defendants, among others, asked the court to give to the jury this instruction: "3. If you find, from the evidence, that A. Spaulding, for a good consideration to be paid to him by John Pitcher, the principal defendant in this action, agreed to procure for said Pitcher a release from Chickasaw county of the liability of said Pitcher and the other defendants, his sureties, from the cause of action set up in the petition, and that time was given to the said Pitcher for the payment of a part of such consideration, and that said Spaulding afterward entered into another agreement between himself and Chickasaw county, under which he, the said Spaulding, became the owner of said cause of action before the time given by him to said Pitcher had expired, then said agreement between said Spaulding and Pitcher would operate to suspend all right to prosecute this suit until the time so given by Spaulding to Pitcher had expired. And if you further find that such time was given without the knowledge or consent of the sureties, then it will be your duty to return a verdict for all the sureties." The court refused to give this instruction, but, at the request of the plaintiff, gave the following : " 7. The agreement between Pitcher and Spaulding is not an agreement to extend the time of payment on the bond sued upon ; neither did it necessarily operate to extend the time of payment thereon, or to suspend the right to prosecute the action by the plaintiff."

The refusal to give the first, and the giving of the last, were alike errors. By the terms of the contract between Spaulding and the county, and its performance, he became entitled, as owner, to the bond sued on, and the proceeds of the action upon it. His agreement to accept the piers and materials, and the sum of $1,200 on the 11th day of August following, in payment for the claim, operated, of necessity, to suspend his further right to prosecute the action till that time arrived, whatever might be his rights thereafter. The rule

*2. PRINCIPAL AND SURETY: discharge of surety.*

is too well settled to justify the citation of authorities to support it, that the giving of a valid obligation, payable in the future, operates to suspend all right of action on the consideration for which it is given, until the expiration of the time fixed for the payment of the obligation; and this, although the obligation is not, in itself, payment (*sed vide* authorities cited in 2 Pars. on Contr. 683, 684). So, also, is the rule well settled, that if the creditor, by any arrangement, entitles the principal debtor to claim, for any time, exemption from performance, it will operate to discharge the surety. *Hershler* v. *Reynolds*, 22 Iowa, 152; *Bonney, Adm'r,* v. *Bonney*, 29 id. 448, and cases cited in each. The same may be said respecting other instructions, both those given and refused, but it is not necessary to review them at length.

III. The plaintiff asked the court to give the following instruction, which was refused, and thereon the plaintiff assigns error: " 8. If the jury find from the evidence that the contract between Spaulding and Pitcher was never delivered so as to become a fully completed contract, and that Pitcher had never complied with its terms by payment of the note therein embraced, the plaintiff is entitled to recover in this action all damages sustained by reason of the non-performance of his contract by Pitcher with plaintiff." It was not error to refuse this. In the first place it is exceedingly uncertain and ambiguous. What is meant by the expression " was never delivered so as to become a fully completed contract? " Was it intended to ask the jury to find that the contract was never delivered? If so, why not stop there? And, besides, if it was never delivered, why ask the jury to further find whether its terms were complied with? But there was no issue or evidence to justify any claim that the contract was never delivered. After the contract was executed, Spaulding took all that he was entitled to under it, except the money, and it does not lie in his mouth, therefore, to say that it was never delivered. The interrogatories to the jury upon this point were equally uncertain and evasive, and should

*4. INSTRUCTIONS.*

*5. VERDICT.*

have been rejected, because they did not call for an answer which was an ultimate fact.

As to the plaintiff's appeal, the judgment must be affirmed. As to the defendants' (sureties) appeal, it must be reversed. As against the defendant, Pitcher the judgment may be allowed to stand. The abstract contains forty pages of testimony. It is not prepared according to the rules of this court which require an abstract of the testimony in narrative form. The testimony in this case contains both questions and answers, and is full twice as long as it ought to be. Hereafter, no allowance whatever will be made for printing testimony in that form. In this case the clerk will tax the costs for printing twenty pages only of the testimony.

Reversed.