UNITED STATES v. AMERICAN BONDING & TRUST CO. OF BALTIMORE CITY et al.

(Circuit Court of Appeals, Fourth Circuit. November 1, 1898.)

No. 272.

1. SURETYSHIP—CONSTRUCTION OF CONTRACT.
    A contract of suretyship should be strictly construed, and not extended by implication.
2. SAME—VARYING TERMS OF CONTRACT.
    Defendant became surety on the bond of a government contractor, which under the statute was conditioned for full payment by the contractor to all persons supplying lumber or materials for the work. Plaintiffs furnished materials to the contractor, and during the progress of the work were paid by him, from its proceeds, sums in excess of the value of such materials; but plaintiffs (though having knowledge of the suretyship), without notice to defendant, applied such payments upon a

prior indebtedness of the contractor, and took notes from him which extended the time of payment for the materials beyond the time for completion of the contract, and until after the contractor became insolvent. *Held* that, as to defendant, plaintiffs were bound to apply such payments on the indebtedness arising under the government contract, and defendant was released from liability therefor.

In Error to the Circuit Court of the United States for the District of Maryland.

Fielder C. Slingluff and Alfred S. Niles (William T. Donaldson, on brief), for plaintiffs in error.

E. J. D. Cross and J. L. G. Lee (John J. Cowan and H. L. Bond, on brief), for defendant in error.

Before GOFF and SIMONTON, Circuit Judges, and WADDILL, District Judge.

WADDILL, District Judge. This case comes before us upon a writ of error to a judgment of the circuit court of the United States for the district of Maryland rendered on the 2d day of February, 1898, in an action at law pending in said court under the name of the United States, suing for the use of Heise, Bruns & Co., the plaintiffs in error here, against the American Bonding & Trust Company, the defendant in error here, who were the sureties for Minor & Bro., sued jointly with said defendant in error.[1] The facts in the case are briefly these: Minor & Bro., builders and contractors, of the city of Baltimore, on the 12th day of June, 1895, contracted with the United States to erect certain hospital buildings at Ft. Meyer, Va., for the sum of $18,200, and gave a bond, dated June 13, 1895, in the penalty of $6,500, with the American Banking & Trust Company, now the American Bonding & Trust Company, of the city of Baltimore, the defendant in error here, as surety for the faithful performance of the said contract; and one of the conditions of the bond was that the contractors, Minor & Bro., should "make full payment to all persons supplying them lumber or materials in the prosecution of the work provided for in said contract." This clause was inserted in accordance with the provisions of an act of congress approved August 13, 1894, which in substance provides that any person or persons thereafter entering into a formal contract with the United States for the construction of any public buildings, or the prosecution or completion of any public work, or for the repairs upon any public building or public work, should be required, before commencing work, to execute the usual penal bond, with good and sufficient security, with the additional obligation that such contractor or contractors should promptly make payment to all persons supplying it or them lumber or materials in the prosecution of the work provided for in such contract; and in said act provision is made for subcontractors or material men, in default of receiving payment for work done, to sue upon such bond in the name of the United States. 28 Stat. 278, c. 280. In the execution of the con-

[1] 89 Fed. 921.

tract on the part of Minor & Bro. with the United States, they made purchases of materials and supplies from the plaintiffs in error, Heise, Bruns & Co., to the amount of $2,474.51, which were used in the construction of the government work in question, and for which they did not make payment, but failed, making an assignment on the 24th of July, 1896.    To recover the amount thus due, plaintiffs in error, Heise, Bruns & Co., suing in the name of the United States, brought this action on the bond aforesaid given by the contractors, Minor & Bro., and upon which the defendant in error, the American Bonding & Trust Company of Baltimore City, was surety as aforesaid.    Prior to the execution of the bond aforesaid by Minor & Bro., and to their making the contract aforesaid with the government, they were required to execute what was known as a "preliminary bond" (that is to say, a bond before bidding upon the work in question), and one of the conditions of which was that in case the contract was awarded to them the surety would sign the bond required for the performance of the contract.    Early in April, 1895, some two months before the making of the contract aforesaid, Minor & Bro. applied to the defendant in error, then the American Banking & Trust Company, to become their surety on this preliminary bond; and before joining in the same, and with the obligation to sign the final bond, the defendant in error endeavored to ascertain the business and financial standing of Minor & Bro., by sending printed questions to sundry persons (among others, to the plaintiffs in error), making extensive inquiry as to the financial condition, habits, and method of doing business of said Minor & Bro.    Among the questions asked the plaintiffs in error were the following (question 13): "Are you aware of his [referring to Minor & Bro.] being at present under any obligation or liabilities whatever?"    They answered, "I do not."    And to question 14, "Has he been prompt in paying ordinary debts?" they answered, "Yes."    This communication was dated the 5th of April, 1895, and the fact is that on that very day Minor & Bro. owed Heise, Bruns & Co. $3,196.78, of which $2,886 was represented by four unmatured promissory notes, being in great part renewals of notes maturing in January previous, and $310.78, balance due on open account.    Minor & Bro. appeared and defended said action on the ground that they were insolvent, and had been duly discharged under the insolvency laws of the state of Maryland; and the American Bonding & Trust Company, the defendant in error here, appeared and denied all liability under said action against it, or that it was ever indebted as alleged in the declaration.    Thereupon the case was, by written agreement, submitted to the court for trial, both sides waiving the right of trial by jury; and the court, having fully heard the evidence, found for the defendant, and rendered judgment dismissing the suit, whereupon this writ of error was sued out.

The specific grounds of error assigned here are that the learned judge in the court below erred in refusing the first prayer or finding asked for by the plaintiffs, and in granting three certain prayers or findings offered by the defendant.    The plaintiffs' first prayer, refused by the court, is as follows:

"The plaintiff prays the court, if it shall find from the evidence that the firm of Heise, Bruns & Co. made a contract with Minor & Bro. to furnish material for the construction of the hospital building at Ft. Meyer, Virginia, and that the terms of the said contract were the usual terms of their business dealings with said Minor & Bro., and that the conditions of said contract were not changed during its pendency, the plaintiff is entitled to recover from the defendant the American Bonding & Trust Company the balance now due Heise, Bruns & Co. for account of said materials so furnished, provided the court shall find that the plaintiff complied with the provisions of the statute under which the proceedings are authorized."

What may be said of the objection of the plaintiffs in error to the action of the court in refusing to grant this prayer may be said, more or less, of the several assignments of error made to the action of the lower court; that is to say, the court failed to find the existence of the state of facts upon which the instruction was predicated.   Upon the facts contemplated by the proposed prayer, the law may have been correctly stated therein, but upon the finding of the facts by the court the law would have been improperly enunciated.   The case was submitted to the court without a jury, pursuant to section 649, Rev. St. U. S., and the general finding of the court upon questions of fact has the same effect as the verdict of a jury.   The prayer was asked upon the hypothesis that the court would find as a fact that the terms of the contract between Minor & Bro. and the plaintiffs in error for the purchase of materials were the usual terms of their business dealings, and that the conditions of the said contract were not changed during its pendency. The court, however, did not find this as the correct state of facts, and, on the contrary, determined that the contract and understanding was that Minor & Bro. would pay for the materials purchased by them as they received money from the government on account of the building, and not that they were to be paid for by the acceptance of the notes of Minor & Bro., which notes might be renewed, from time to time, as seems to have been done,—extending in fact beyond the period at which the government paid for the building, and until Minor & Bro. had failed.   If Minor & Bro. were to have paid plaintiffs in error as they received the money from the government on account of the building, and, instead thereof, plaintiffs in error accepted notes running indefinitely, then it would not be seriously claimed, we take it, that the prayer in question should have been granted.   This is precisely what the court held that they did do, and upon this state of facts we are of opinion that the court was clearly right in not granting the proposed prayer.

The next assignment of error is that the lower court erred in granting defendant's first, fourth, and sixth prayers, which, in substance, determined:   First, that plaintiffs in error, having answered the questions propounded by the defendant in error as to the financial condition of Minor & Bro. before going upon the bond in question incorrectly in a material matter, the existence of which increased the risk assumed, and a disclosure of which might have led defendant in error not to have joined in the bond (that is to say, certified to said defendant in error that Minor & Bro. were free from debt, when in point of fact they were largely indebted to them at the time), they

were thereby disentitled to recover; secondly, that plaintiffs in error, having taken notes for the amount due for material furnished to Minor & Bro. under the contract for the erection of the government building, the time of payment of which extended beyond the completion of the government work, and the payment therefor by the government under the contract, they were thereby disentitled to recover on the said bond; and, thirdly, that a contract of suretyship should be strictly construed, and not extended by implication. Upon our view of this case, it will not be necessary to pass upon the action of the court below in granting the defendant's fourth prayer, as to the effect of plaintiffs in error answering the questions propounded to them by the defendant in error before the latter joined as surety in the conditional bond referred to in this case; and we shall, as to this question, without expressing any opinion thereon, content ourselves with a mere reference to the able opinion of his honor, Judge Morris, in the lower court.

The two remaining assignments of error we will consider together, first taking up the prayer granted by the lower court,—"that the contract of suretyship should be strictly construed, and not extended by implication." There can, in our judgment, be no doubt of the correctness of this statement of the law. When the rights of sureties are involved, they are only bound by the contract which they have signed, and have a right to look to a literal and strict construction of the same, and not that such contract shall be extended, either by implication, or as a consequence of what others may do in matters of which they have no notice, and with which they are not connected. Miller v. Stewart, 9 Wheat. 680–702; Leggett v. Humphreys, 21 How. 66; Reese v. U. S., 9 Wall. 13. In this last case, Mr. Justice Field, speaking for the court, at page 21, thus states the doctrine:

"Any change in the contract on which they are sureties, made by the principal parties to it, without their assent, discharges them, and for obvious reasons. When the change is made they are not bound by the contract in its original form, for that has ceased to exist. They are not bound by the contract in its altered form, for to that they have never assented. Nor does it matter how trivial the change, or even that it may be of advantage to the sureties; they have the right to stand upon the very terms of their undertaking."

We come now to consider the action of the court in granting defendant's first prayer, as to the consequence of plaintiffs in error accepting notes for the amount due them for material furnished under the government contract, extending beyond the time of the completion of the work, and the payment therefor by the government, and in this connection will consider the case carefully upon its merits, and the result of the dealings between plaintiffs in error and Minor & Bro. on the rights of the defendant in error, the surety for said Minor & Bro. The doctrine is so well settled as to the effect on the rights of sureties of a creditor changing, without the consent of the surety, his securities, and extending the time of payment of, or in any manner contracting to enlarge, the same, for a fixed and definite period, that it seems almost useless to state the same, or cite authorities in its support. It is that a surety is bound by the terms of his contract, and if a creditor, by agreement with the principal debtor,

89 F.—59

without the concurrence of the surety, varies its terms by the enlargement of the time of performance, the surety is discharged. Martin v. Thomas, 24 How. 315; Smith v. U. S., 2 Wall. 219; Rees v. Berrington, 2 Ves. Jr. 540. And the cases generally on this point will be found collated under the leading case of Rees v. Berrington, 2 Ves. Jr. 540, 2 White & T. Lead. Cas. Eq. 1867 et seq., and particularly note pages 1906, 1908, 1915:

"It is well settled that taking a bill or note payable at a future day for an existing debt implies an agreement to wait until the instrument matures, which will discharge all the parties who are secondarily liable for the payment of the debt as sureties or guarantors." Okie v. Spencer, 2 Whart. 253; Mercer v. Lancaster, 5 Pa. St. 160; Myers v. Welles, 5 Hill, 463; Fellows v. Prentiss, 3 Denio, 512; Bangs v. Mosher, 23 Barb. 478; Chickasaw County v. Pitcher, 36 Iowa, 593; Brooks v. Wright, 13 Allen, 72; Andrews v. Marrett, 58 Me. 539; Appleton v. Parker, 15 Gray, 173.

The principles upon which the surety is discharged by certain acts of the creditor without his concurrence are well stated by Lord Loughborough in the leading case of Rees v. Berrington:

"It amounts," he observes, "to this: that there shall be no transaction with the principal debtor without acquainting the person who has the greatest interest in it. The surety only engages to make good the deficiency. It is the clearest and most evident equity not to carry out any transaction without the privity of him who must necessarily have a concern in every transaction with the principal debtor. You cannot keep him bound and transact his affairs (for they are as much his as your own) without consulting him. You must let him judge whether he will give that indulgence, contrary to the nature of his engagement."

Upon the facts in this case, it seems to us clear that the plaintiffs in error were not entitled to recover in any event. The contract for the work was made with the government on the 12th of June, 1895, and thereunder materials were furnished for the government building from time to time from July, 1895, to May, 1896, amounting in all to $2,474.51. That during said period other purchases were also made by Minor & Bro. of the plaintiffs in error. That payments were made to the said Minor & Bro. by the government from month to month. That during the running of the said transactions $6,500 was actually paid by said Minor & Bro. to the plaintiffs in error. That the whole of the original debt of $3,196.78, outstanding at the time of the answering of the question by the plaintiffs in error on the 5th of April, 1895, was entirely extinguished, so that there remained at the time of the failure of said Minor & Bro., on July 24, 1896, only $3,415.78 due the plaintiffs in error from Minor & Bro., including the $2,474.51 furnished on account of the government. That no part of the $6,500 thus received by the plaintiffs in error during that time, and much of which was the very money received from the government for the work in question, was applied to the extinguishment of the account due for materials furnished for the government building, except the sum of $185, although the entire original debt of $3,196.78 was extinguished. Indeed, as far as possible, in the dealings between the parties, it would seem that the materials furnished for the government building were allowed to remain unpaid for, and, instead thereof, notes were accepted in settlement therefor, continuing

and extending the debt beyond the period for which the government payments were made upon the building, and, indeed, until the contractors had failed. Plaintiffs in error knew of the existence of the suretyship. They knew that it was upon the faith of the bond executed by the defendant in error that they furnished the material, and they sold the same upon the understanding that they were to be paid for their material as the money was received by the contractors from the government. They thus knew of the situation in which defendant in error was, and the defendant in error did not know the fact even that materials were being furnished by the plaintiffs in error to said Minor & Bro. on account of this work. Upon this state of the facts,—viz. that the contract between plaintiffs in error and Minor & Bro. was not one of credit, but that they were to be paid as the latter received money from the government on account of the work done, and that the money was paid by the government to said Minor & Bro., who in turn paid it to the plaintiffs in error, and they applied the same not to the debt due for materials on the building, but for other outstanding debts previously existing between them,—it would be manifestly unjust and unfair to allow plaintiffs in error thus to apply the money they had received for the work done on the government building, and then require the defendant in error to make good to them a debt that would have been worthless but for the application thereto of money received from the government, which ought to have been applied to the payment of the debt for which the surety was bound. This would be the result ordinarily in any case, and particularly so in the present one, where the plaintiffs in error owed it to the defendant in error to exercise more than usual diligence to see that they were not innocently mulcted by reason of the suretyship. Defendant in error was actually led into this particular transaction by the act of the plaintiffs in error, and surely no court will hear them contend that the surety executing the bond has not complied with its terms and conditions, when they have actually received the money payable under the contract, and applied it, not in accordance with the terms of the contract under which they sold their goods to the contractors, but applied it to another and different debt due themselves, and which would have been worthless but for the misapplication of the payments thus made to them. To allow them to apply the money received from the government to a pre-existing debt due them, and leave the surety on the government contract in ignorance of the prevailing condition of affairs until after the contractors had failed and made an assignment, would work a great hardship, if not result in an actual fraud, on defendant in error, and cannot be countenanced, even if innocently done. In dealing with sureties, the utmost good faith must be observed, as in many cases like the present they are not able to know the exact condition of affairs of the party for whom they have become surety. Had an intimation been given the surety in this case that the money received from the government was not being applied to the payment of the debt due plaintiffs in error for materials, they could easily have protected themselves, as other persons did, by notifying the government before the payments were made; and in great part this

relief could have been afforded long after the materials were actually furnished, as 20 per cent. of the amount payable under the contract with the government was held back until the final acceptance of the work. Under the United States statute, the contractors could not have made a valid assignment of the money, and mere notice by the surety that the material men were not being paid would have led to an appropriation by the government for that purpose of the money due contractors; but the plaintiffs in error, with this knowledge, neither informed the defendants in error nor the government of the failure of the contractors to pay for the materials furnished them, and, on the contrary, took the money paid by the government on account of the work in part, and applied it to the payment of other debts, and accepted notes for amount due for materials furnished under the government contract extending over the period when the last payments were made by the government, and which notes, as a matter of fact, did not mature until a date subsequent to the failure of the contractors. It is manifest, upon such a state of facts, plaintiffs in error should not have recovered in the court below, and said judgment is hereby affirmed.