Argued July 2, decided July 15, 1913.

# BROSS *v.* McNICHOLAS.

## (133 Pac. 782.)

**Principal and Surety—Rights of Surety as to Creditor.**

1.   Where a brickmaker had made several different contracts with the same buyer for the sale of bricks, the last of which was assured by a surety bond, the surety company could not require bricks thereafter delivered to be credited by the buyer upon the contract assured by it, unless the bricks delivered were the identical bricks described in that contract.

**Principal and Surety—Remedies of Creditor—Questions for Jury.**

2.   Where the evidence was conflicting as to whether they were the identical bricks, the court could not direct a verdict for the surety company on the ground that the contract had been peformed.

**Principal and Surety—Liability of Surety—Notice of Principal's Default.**

3.   Where a surety bond required the indemnitee to notify the surety company immediately after the occurrence of an act involving loss should come to his knowledge, all that was required of the indemnitee was that he notify the surety company with due diligence and within a reasonable time.

**Principal and Surety—Remedies on Bond—Questions for Jury.**

4.   Where the evidence was conflicting as to whether the notice was given within one day or eight days after knowledge by the indemnitee, it was a question solely for the jury whether it was given within a reasonable time, whichever length of time actually elapsed.

**Principal and Surety—Liability of Surety—Nature.**

5.   Since it has become common for corporations to become sureties for an adequate consideration, the strictness of the old rules regarding suretyship has been relaxed, and a surety company must show some injury caused by failure to give notice, as required in the bond, before it can be absolved from its contract.

**Principal and Surety—Remedies of Creditor—Evidence.**

6.   Where a complaint, upon a bond securing a contract for the sale of bricks, alleged failure to deliver the bricks, the answer affirmatively asserted that the bricks had been furnished according to the contract, and the replication was a general denial of the new matter in the answer, it was proper for the plaintiff, after the defendant had brought out upon cross-examination of him that a quantity of bricks had been delivered, to prove the exact number of bricks delivered and the time and place of their delivery, to show that they were not the bricks sold under the assured contract, since that was not a matter of confession and avoidance.

7.   Where a surety bond required the creditor to give notice of breach by the principal in writing to the president of the company at its principal office, and there is sufficient evidence that the notice was given, the determination of the jury on that question is conclusive.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE MCNARY.

This action, by Albert Bross, is brought upon a surety bond given to the plaintiff by the defendant Jas. H. McNicholas, doing business under the firm name and style of the National Brick & Clay Company, as principal, and the Pacific Surety Company, a corporation, as surety. On the 8th day of February, 1911, the defendant, Jas. H. McNicholas entered into a contract with plaintiff, whereby McNicholas agreed to sell and deliver to plaintiff, at such points in Portland, Oregon, as plaintiff might designate from time to time, 500,000 bricks ''of the kind and quality usually manufactured by the plants owned by defendant McNicholas,'' for the price of $5 per thousand, aggregating the sum of $2,500, plaintiff paying at the time the purchase price of the bricks. As a part of the contract between plaintiff and defendant McNicholas, the latter agreed to assure the performance of the contract upon his part by supplying plaintiff with a surety bond, and to that end on said day defendant McNicholas and the Pacific Surety Company entered into an undertaking in the sum of $2,500, binding themselves to deliver the bricks to plaintiff in accordance with the terms of the contract, or in default thereof to pay plaintiff the sum of $2,500. By the terms of said bond, it is provided among other things: ''That said surety shall be immediately notified of any breach of said contract by said principal, or of any act on the part of said principal, or his agent or employees, which

may involve a loss for which said surety may be liable hereunder, immediately after the occurrence of such act shall have come to the knowledge of said owner, or his duly authorized representative or representatives who shall have the supervision of the completion of said contract; said notification must be in writing to the president of said surety, at its principal office in San Francisco, California.''

Plaintiff brings this action upon the undertaking, setting out in his complaint the contract and bond in question, alleging failure of McNicholas to deliver any of the bricks guaranteed by the undertaking, and prays for judgment in the full penal sum provided in the bond.

The defendant McNicholas made default. The Pacific Surety Company denied any breach of the bond, and alleged failure on the part of the plaintiff to give immediate notice of the breach of the contract, as provided in the bond, and pleaded delivery by McNicholas to plaintiff of the bricks of the kind and quality contracted for at places designated in Portland.

The allegations of affirmative matter in the answer were denied by the respondent. The issues thus made were tried by the court and jury, with the result that a judgment was rendered in favor of the plaintiff for the sum of $2,500, with interest and costs. From this judgment the defendant, the Pacific Surety Company, appeals.                                          AFFIRMED.

For appellant there was a brief over the names of *Mr. Thomas H. Crawford* and *Messrs. Wilbur, Spencer & Dibble,* with an oral argument by *Mr. Crawford.*

For respondent there was a brief over the names of *Messrs. Rauch & Senn,* with an oral argument by *Mr. Frank S. Senn.*

MR. JUSTICE McNARY delivered the opinion of the court.

The initial error assigned and relied upon by counsel for the defendant, the Pacific Surety Company, is founded upon the refusal of the court to instruct the jury that, "upon the undisputed facts in evidence in this case, you are directed to return a verdict for the defendant the Pacific Surety Company."

Fully to appreciate the ruling of the court, we deem important a *résumé* of the testimony, as this assignment of error gives rise to the most vital phase of the case. Prior to March 30, 1911, the defendant Mc-Nicholas, doing business as the National Brick & Clay Company, was the owner of several brickyards in or near the city of Portland, Oregon. Plaintiff, who is a contractor operating in the city, gave testimony, and in corroboration thereof introduced in evidence two bills of sale, to the effect that he had purchased from McNicholas, at various times between December 29, 1910, and February 8th following, large quantities of bricks, aggregating 750,000, that plaintiff had received on account thereof only 566,744 bricks, and that no delivery had been made under the contract of February 8, 1912, the faithful observance of which was guaranteed by the defendant surety company. It is admitted that bricks purchased, as evidenced by the bills of sale, were not delivered until after the execution of the contract and bond under consideration. True, counsel for the defendant surety company insist the bricks delivered to plaintiff were in virtue of the contract underwritten by the surety, and, if applied as the wisdom of the law directs, would exculpate the surety company from liability.

1, 2. While the authorities are not in harmonious accord, we think that, as a general proposition, the surety cannot direct the application of payments made

by the principal and the creditor, or either of them. However, this rule is applicable solely in those cases where the principal makes the payment from funds which are his own and are free from any equity in favor of the surety to have the money applied in payment of the debt of which the surety is liable, but *where* the specific money paid, or property delivered to the creditor, is the identical money or property for the payment and delivery of which the debtor and his surety obligated themselves by the contract and undertaking, the surety is not bound by an application of the money or property to some other debt for which the surety is not liable. In such cases the surety is equitably entitled to have the money paid, or the property delivered, applied to the payment of the debt or the liquidation of the contract for which he is liable: *Merchants' Ins. Co.* v. *Herber,* 68 Minn. 420 (71 N. W. 624) ; *United States* v. *American Bonding & Trust Co.,* 89 Fed. 925 (32 C. C. A. 420). Applying this rule to the case at hand, if the bricks delivered by defendant McNicholas to plaintiff were the specific bricks described in the contract, the performance of which the surety company had guaranteed, no liability would attach to the Pacific Surety Company, as the rule announced would require plaintiff to apply the bricks delivered on the contract guaranteed by the bond. But, on the other hand, if the bricks delivered to the plaintiff by McNicholas were the bricks sold or contracted to be sold to plaintiff prior to the execution of the contract and bond for which the surety company was liable, plaintiff had a legal right to place the bricks to the credit of the contract made at a prior time. Under the controversial state of the testimony, the lower court could not direct the jury to return a verdict in favor of the defendant, the Pacific Surety Company, and no error can be predicated thereon.

3, 4. It is claimed that the trial court erred in giving to the jury the following instructions:

"I instruct you that the words in said bond in this suit 'shall be immediately notified' mean promptly and without unnecessary delay after knowledge of a breach of the contract had come to the plaintiff, would not be technical knowledge of the plaintiff. Therefore I instruct you, if you find from the evidence in this case that McNicholas breached his contract in this case, and that such breach came to the knowledge of his representative having supervision of the completion of said contract, and that plaintiff thereafter failed to notify the defendant, Pacific Surety Company, in the manner required in the bond in this action, then plaintiff cannot recover, and your verdict must be for the defendant, Pacific Surety Company."

Counsel for the surety company argue that plaintiff had knowledge of the breach of the contract on March 30, 1911, but he neglected to give notice thereof until April 7, 1911, which delay forecloses plaintiff to recover upon the bond, in view of the provision that the surety company should be immediately notified of any breach by the principal. To the contrary, plaintiff's counsel insists the default of the principal was not known until April 7, 1911, and that notice thereof was given on the day following. Again, we are confronted with conflicting testimony. However, be the interim eight days or one day, all the plaintiff was required to do was to notify the surety company of the breach of the contract by the principal with due diligence and within a reasonable time after being apprised thereof. Whether that was done was a question solely for the jury to determine: 4 Cooley, Brief on Insurance, p. 3579; *Fidelity & Deposit Co. v. Courtney,* 186 U. S. 342 (46 L. Ed. 1193, 22 Sup. Ct. Rep. 833); *Bacigalupi v. Phoenix Building Construction Co.,* 14 Cal. App. 632

(112 Pac. 892); *Dakin* v. *Queen City Fire Ins. Co.*, 59 Or. 269 (117 Pac. 419); *Donahue* v. *Windsor Co. etc. Ins. Co.*, 56 Vt. 374.

5. The law of suretyship has undergone a considerable change in late years. The day of personal suretyship is fast slipping away, and in its stead comes the corporate surety for profit. This new condition has brought about a new construction of the law. The rules as applied to the insured have been softened, while the rules applicable to the surety have been drawn more stringently. The reason, therefore, lies in the very nature of the transformation. Formerly, a surety was an individual, or collection of individuals, actuated by beneficent motives to carry the burden of suretyship, receiving no profit or benefit, and, in consequence thereof, the law dealt tenderly with him or them. But, in this day and age of corporate sureties, when the burden is lightened by the payment of adequate premiums, and their final liabilities ofttimes secured by counter indemnity, the strictness of the old rule is relaxed, and the modern day surety company must show some injury done before they can be absolved from the contracts which they clamor to execute: *Baglin* v. *Title Guaranty Co.* (C. C.), 166 Fed. 356; *United States Fidelity & Guaranty Co.* v. *United States,* 178 Fed. 692 (102 C. C. A. 192); *Guaranty Co.* v. *Press Brick Co.,* 191 U. S. 416 (48 L. Ed. 242, 24 Sup. Ct. Rep. 142); *Atlantic Trust Co.* v. *Laurinburg,* 163 Fed. 695 (90 C. C. A. 274). No claim is made by the surety company that the delay of which it complains worked to its injury.

6. The contention is made by counsel for the indemnity company that no issue was tendered by the pleadings of the application of the 500,000 bricks of the kind and quality named to any other contract or debt than the contract secured by the bond in question.

By recurring to the complaint, it will be observed that the action is founded upon a breach of contract to supply the bricks therein described. The answer denied the breach, and affirmatively asserted the bricks had been furnished conformably to the terms of the contract. The reply denied generally the assertions made in the answer. Upon cross-examination of plaintiff, by counsel for the surety company, testimony was elicited that a quantity of bricks other than those specified in the contract, secured by the indemnity bond, were delivered by McNicholas to plaintiff. This evidence being produced by the perseverance of counsel for the surety, it was proper for plaintiff's counsel to offer proof of the exact number of bricks delivered to plaintiff and the time and place of delivery. The receipt of these bricks was not in the nature of a plea of confession and avoidance, for their delivery was not a part of the contract in controversy, but a matter affecting a transaction had between plaintiff and Mc-Nicholas at a prior time.

7. The position is taken by defendant, the Pacific Surety Company, that notice of the breach of contract was not given as required by the bond, namely: "That notification must be given in writing to the president of the company at the principal office in San Francisco, California." Assuredly there was ample testimony adduced at the trial tending to show that notice was sent by mail to the president of the company at its head office. Proof was offered that the local agent of the surety company was notified, and in turn he notified the principal office of the company. Letters were produced evidencing the fact that officers of the company in San Francisco and counsel for plaintiff had correspondence concerning the contract and the alleged breach thereof. This part of the controversy

66 Or.—4

was presented to the jury, and being an issue of fact, the determination thereof is conclusive on appeal.

We see no error, and the judgment is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.