CAROLINA PORTLAND CEMENT CO. v. UNITED STATES FIDELITY & GUARANTY CO. ET AL.

(November 3, 1931. Opinion and Decree.)
(November 16, 1931. Rehearing Refused.)
(January 1, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

Deutsch & Kerrigan, of New Orleans, attorneys for plaintiff, appellant.

Sanders, Baldwin, Viosca & Haspel and Robert Weinstein, of New Orleans, attorneys for defendant-appellee, United States Fidelity & Guaranty Company.

Bond, Curtis, Hall & Foster, of New Orleans, attorneys for defendant-appellee, John McGrath.

HIGGINS, J.  This is a suit by a furnisher of materials against a subcontractor and the surety on the general contractor's bond, in solido, to recover the sum of $277.95 for building material sold and delivered.

The subcontractor pleaded payment. The surety called the general contractor in warranty, averring that in the application for the bond the contractor agreed to indemnify the surety against any loss as a result of signing the building contract as surety. The defenses of the surety and the general contractor are:

(1) That the claim was paid because, where the furnisher of building materials keeps separate accounts of materials furnished for each job, and knows, or should have known when payment is made, that the money in question came from a particular job, he is held to have knowledge of the source of the money, and cannot impute payment to another account.

(2) In the alternative, that the debt in question was paid because, at the time of the last payment of $500 by the subcontractor, the claim sued upon was the oldest and most onerous, and the $500 payment should have been imputed to it under the provisions of article 2166 of the Revised Civil Code.

(3) That, where the parties to a contract have followed a custom for a long time, this custom will be construed as an implied condition of the contract, and is binding on the parties, and that, as the plaintiff

breached this implied condition, it is not entitled to recover.

(4) That, where one, by his words or conduct, causes another to believe in the existence of a certain state of things and induces him to act on that belief, so as to alter his own previous position, the former is precluded from averring against the latter a different state of things existing at the same time, and that therefore plaintiff is estopped.

The judge a quo rendered judgment dismissing the plaintiff's suit, and also the call in warranty, and the plaintiff alone has appealed.

The record shows that John McGrath had been buying building materials from the plaintiff, which is engaged in that business. The New Orleans Construction Company, one of the defendants, is in the contracting business and had dealings with the plaintiff for some fifteen years. It was the practice or custom between them that, where the New Orleans Construction Company had a contract for constructing buildings, or improvements, and the plaintiff was the furnisher of the materials, plaintiff would send to the New Orleans Construction Company invoices covering materials furnished to subcontractors and the construction company would ·deduct from the amounts due the subcontractors the claim of the plaintiff for materials furnished and remit direct. The purpose of the arrangement was to insure payment of the bills. It appears that the plaintiff recommended McGrath as a reliable and trustworthy subcontractor, and the construction company intrusted three jobs to him. In none of these instances did the plaintiff send the invoices to the construction company because the officers of the plaintiff company were well satisfied with the honesty of McGrath, who was a good customer of the plaintiff. McGrath had purchased materials for several jobs before he subcontracted with the New Orleans Construction Company, and left balances due on these respective accounts. All of these accounts, together with the three jobs that McGrath undertook for the construction company, were kept separate by the plaintiff company. After the completion of the first job in Neron place, McGrath failed to pay for all the materials used. He then entered upon the second job at Audubon boulevard, which he completed without paying for all of the material furnished to him. He commenced work upon the third job at Fontainebleau drive, and, as this job was nearing completion, the construction company, while still owing McGrath $450, was notified for the first time by the plaintiff that McGrath owed plaintiff for material on the other jobs. The officer of the construction company then inquired of the manager of the plaintiff company if he should withhold the payment and remit direct, and the answer was in the negative, with the explanation that the plaintiff valued McGrath's patronage and did not wish to offend him. The money was then paid to McGrath, who, in turn, remitted to the plaintiff, and this money was imputed to the payment of the material furnished to the Fontainebleau drive job.

Taking up the defenses in the above order, McGrath testified that, while working on the Audubon boulevard job, the representative of the plaintiff company called on him and solicited orders for other material and, at the same time, requested payment on account of the materials already furnished; that he told plaintiff's representative that he would see Mr. Jones of the New Orleans Construction Company and obtain some money that was due him to ap-

ply on the Audubon boulevard job and would send it to the plaintiff; that on or about August 20, 1929, he obtained $300 from Mr. Jones for the purpose of paying for the materials furnished for the Audubon street job and mailed it to the plaintiff. It is undisputed that this check was received, and, as the check was unaccompanied by any explanation as to what account it would be applied to, the bookkeeper imputed it as follows: $8 to State street work, $31.64 to St. Charles street job, and $260.36 to Neron place job.

The plaintiff contends that, as the check was not accompanied by any invoice or letter of instruction as to what account the money should be applied to, it had a right to impute payment to the other accounts.

The defendants contend that, since McGrath, the debtor, told the salesman or representative of the company, who called upon him on the Audubon street job for payment, from what source he would obtain the money to pay the Audubon boulevard account, and, as the officers of the plaintiff company were apprised at that time on what job McGrath was working, they knew or should have known the source of the funds and imputed it to the payment of the Audubon boulevard job.

We note that the salesman or representative of the plaintiff who called upon McGrath to sell him more material and to collect for merchandise previously sold was not placed on the stand, and no excuse was offered for having failed to do so. There is nothing in the record to show that he was unavailable as a witness. The testimony of McGrath, therefore, stands uncontradicted. From the testimony of Mr. Jones of the New Orleans Construction Company, and Mr. Bowers, who was for-merly the vice-president and traffic manager of the New Orleans office of the plaintiff company and, at the time of the trial, while not in its employment, was still a stockholder (both defendant witnesses who are also uncontradicted), we are convinced that the plaintiff officers kept themselves informed as to the respective jobs that McGrath was working on and from which, of course, he received the money to pay for the materials. We feel certain that the officers of the plaintiff company knew that the remittance of $300 was from the funds furnished by Mr. Jones in connection with the Audubon boulevard contract and was intended to be applied against the claim for materials furnished for that improvement.

In the case of Roca v. Caruso, 7 Orl. App. 451 (1910), the court considered a case practically the same as the instant one, and said:

"And it is equally unfair for a furnisher of material, knowingly to receive of a contractor money paid to the latter under one contract, and impute the same to some other account whilst the debt incurred in connection with the contract remains unpaid. By that simple system any furnisher of materials would have it in his power to prejudice of the rights of one surety or owner to the advantage of another, as his pleasure or interest might suggest. He might even recoup losses due to his own negligence or laches, by imputing such payments to some worthless account, and in due course falling on a new surety or owner for the whole amount of the new account."

In Hortman-Salmen Co., Inc., v. Naquin et al., 12 La. App. 491, 126 So. 453, 455 (1930), we said:

"The correct rule, then, is that, if the creditor in such a case as is presented here has knowledge, actual or constructive, that the funds given him by his debtor were derived from a particular source, the payment

in question cannot be imputed in accordance with the article of the code, nor by agreement between debtor and creditor, if such· imputation would be prejudicial to the interest of the third person from whom the funds were obtained."

In the case of Shreveport Long Leaf Lbr. Co., Inc., v. Meeks et al., 169 La. 1020, 126 So. 513, the lumber company brought suit against the contractor and the surety on his bond to recover for material sold. The court said:

"We do not consider it necessary to review the testimony further than to say that J. N. Meeks testified that he instructed the plaintiff to impute the payment of $2,000 made on September 27, 1926, in its entirety, on the job erected under contract with Mrs. Emma B. Gras, in connection with which the Union Indemnity Company was surety upon his bond. Plaintiff admits the payment, but its witnesses testified that, in their prior dealings with Meeks, it had been their custom to apply payments made by him to his debts of longest standing, and that custom was followed in reference to the payment of September 27, 1926.
"We concur in the conclusion reached by the trial judge that the burden of proof was upon the plaintiff to sustain its contention that the aforesaid payment was properly imputed, and also in his conclusion that plaintiff has failed to establisn that fact by a preponderance of the testimony."

The learned trial judge found that the payment was improperly imputed, and sustained the plea of payment. We believe that his finding is correct.

Counsel for the plaintiff has referred us to Grand Lodge, B. K. of A. v. Murphy Const. Co., 152 La. 125, 92 So. 757; Wm. B. Thompson & Co. v. Sporl et al., 160 La. 352, 107 So. 135; State v. Miller et al., 169 La. 914, 126 So. 422; Hortman-Salmen Co., Inc., v. Continental Casualty Co., 170 La. 879, 129 So. 515.

We do not find these authorities in point, because, in each case, the court found that the debtor remitted to the creditor and that the creditor had no knowledge of the source of the money and that the debtor, after being apprised of the manner of imputation, did not object.

In view of the conclusion that we have reached on the plea of payment, it is unnecessary to consider the other defenses.

For the reasons assigned, the judgment is affirmed.