**N. O. NELSON MFG. CO. v. WALLACE et al.**

**No. 1177.**

Court of Civil Appeals of Texas. Eastland.
Nov. 17, 1933.

Rehearing Denied Dec. 15, 1933.

506

Burgess, Burgess, Chrestman & Brundidge and L. E. Elliott, all of Dallas, for appellant.

Seay, Seay, Malone & Lipscomb, of Dallas, for appellees.

HICKMAN, Chief Justice.

This suit was instituted by N. O. Nelson Manufacturing Company against C. E. Wallace, a contractor, and United States Fidelity & Guaranty Company, his surety, to recover for certain plumbing supplies furnished by it to the contractor for use in the construction of a school building for the Aspermont independent school district in Stonewall county. The case was tried before the court without a jury, and resulted in a judgment in favor of appellant against the contractor, but denying any recovery against the surety. No questions are presented with reference to the correctness of the judgment against the contractor, but by appropriate assignments that portion of the judgment denying recovery against the surety is brought under attack.

The material facts are as follows: On December 2, 1930, Wallace and the Aspermont independent school district entered into a written contract whereby, in consideration of $9,300, Wallace agreed to do certain plumbing work on a school building belonging to the district, and to secure the faithful performance of that contract and to protect all persons supplying him with labor and materials in the prosecution of the work provided for therein, he executed the customary public contractor's bond, conditioned as required by the provisions of article 5160, R. S. 1925, as amended in 1929 by the 41st Legislature, chapter 226, p. 481 (Vernon's Ann. Civ. St. art. 5160); said bond being in the penal sum of $4,650, payable to 'the school district as obligee, signed by Wallace as principal, and the United States Fidelity & Guaranty Company as surety.

For many years prior to that date, Wallace had been a customer of appellant, and had become indebted to it in the sum of approximately $4,200, all of which was past due and unpaid at the time of the execution of the contract between him and the Aspermont independent school district. Appellant's representative assisted Wallace in preparing and filing his bid for that contract and had knowledge that same was awarded to him. In connection with the work performed under the contract, the appellant sold Wallace certain supplies, aggregating approximately $4,600, and out of the proceeds of the remittances received by him from the school district he paid to the appellant $4,750; such amount being more than sufficient to pay for all the materials furnished by appellant to him under that particular contract. Some of these payments were made as the work progressed and others after its completion. At the time of the making of each of these payments, appellant knew that all of them were made with money received by Wallace under the Aspermont independent school district contract. When these several payments were made Wallace gave no directions with regard to their application, and appellant applied practically all of them upon the old accounts owing to it by him. Had these payments been applied upon the account for supplies furnished under the Aspermont independent school district contract, there would have been no balance remaining unpaid thereon, and admittedly appellant would have had no character of cause of action against the surety. From time to time as the work progressed and after its completion, appellant filed itemized, verified statements with the county clerk of Stonewall county covering the items of material furnished Wallace for use under his contract with the school district. All of these claims were filed in the manner and within the time provided in amended article 5160. The court below held that the surety had the right to have the payments made by Wallace to appellant applied upon the account for materials furnished in connection with the Aspermont contract, and denied to appellant the right to apply them upon the old accounts.

It is the contention of appellant that the question presented for decision is whether or not the money paid to a contractor on current estimates becomes the property of the contractor absolutely, or is merely paid to him in trust for certain purposes, so that he

becomes a trustee, and any one taking from him, with knowledge of the source of the funds, can be charged with, and made to account for, such funds. It is accordingly contended that, if the courts uphold the surety's contention that it has a right to have the payments made by Wallace to appellant applied upon the account for supplies furnished under the contract for which it is surety, the effect of such holding will be that Wallace's groceryman and all and sundry his creditors who received money from him during the progress of the job, and who were familiar with the situation and knew that such funds had been derived from that particular contract, had received them conditionally, with the right on the part of the surety to bring them into court and recover back from them all amounts so received. Appellee does not concede, and we do not consider, that such far-reaching implications would arise from that holding. The rights of one in privity with the surety under the contract are to be determined by different rules of law from those applicable to strangers thereto.

■■ It must be borne in mind that the liability asserted against United States Fidelity & Guaranty Company was that of a surety, whose obligation is to be strictly construed. The condition of the bond forming the basis of appellant's asserted cause of action against the surety was that the contractor "would promptly make payment to all persons supplying labor or material for use in the prosecution of the work provided for in such contract." When appellant furnished material to be used on this particular building and thereafter duly filed its itemized, verified claims with the county clerk, it became an actual party to the contract and the bond, and its whole right to prosecute this suit rests upon the fact that it is a party to them. There is no contention that the bond was executed to cover past-due accounts owing by Wallace to appellant. If Wallace promptly made payments to appellant for all material furnished by it to him in the prosecution of the work provided for in the contract, then he never made default, and the event giving rise to a cause of action in favor of appellant against the surety has never transpired. He actually made these payments in strict conformity with the obligation of the bond. Then, wherein has he defaulted? It is settled law that he had the right to direct the application of these payments at the several times they were made, and, had he directed their application upon the account for materials furnished in connection with the Aspermont contract, it would have been binding on appellant. If Wallace has defaulted, it is only in his failure timely to direct the application of his payments. No obligation to do so was imposed by the bond. If he owed that duty to any one, it was to his surety, and appellant cannot predicate liability against the surety upon the breach by its principal of a duty which is not named in the bond, and which, if it ever existed, was owing only to the surety.

■ It is a generally accepted principle that, if a debtor, who is obligated to a creditor on several distinct obligations, makes a payment to the creditor and fails to designate the particular obligation upon which he desires the payment to be applied, then the creditor may place such payment upon whatever obligation he chooses. Upon this general principle there are certain well-recognized qualifications.

Colonel Simkins, in his text on Equity, page 840, after stating this general principle, qualifies it as follows:

"However, this is not an unlimited discretion, but the rule will, in equity, be affected by circumstances.

"Where the appropriation by the creditor is unreasonable, and clearly works an injustice, it will not be permitted. Id.; Bray v. Crain, 59 Tex. 649, and cases cited above; Phillips v. Herndon, 78 Tex. 385, 14 S. W. 857, 22 Am. St. Rep. 59.

"Thus, sureties on the bond of a contractor, conditioned for full payment by the contractor to all persons furnishing material, the appropriation of payments made by the contractor for material to an older debt between the creditor and contractor, was not permitted. U. S. v. American Bonding & Trust Co., 89 F. 925, 32 C. C. A. 420."

In Williston on Contracts, vol. 3, § 1804, p. 3118, will be found this language: "The debtor and creditor have ordinarily the exclusive power to determine the application of a payment and in exercising this power are not obliged to consider the interests of third persons such as sureties, unless the source from which the payment is derived (and perhaps the creditor's knowledge of that derivation) imposes a duty on the debtor or creditor or both."

In 21 R. C. L. § 114, p. 107, it is stated; "Notwithstanding the generally accepted principle of the absolute right of a debtor or a creditor to apply a payment, some authorities hold that the rules regarding the application of payments cannot be enforced to the prejudice of third persons."

One of the authorities cited in support of the text is Willis v. McIntyre, 70 Tex. 34, 7 S. W. 594, 8 Am. St. Rep. 574. The same text in section 118, p. 111, reads: "There are two views as to the right of a materialman or subcontractor to apply money which the contractor has received on account of a particular contract, as bearing on the liability of a surety. One view is that a surety is not released of his liability to a materialman or subcontractor where the latter applied payments made to him by the contractor from moneys received of the owner of the building to another claim, where no application was made by the contractor, and the material-

man had no knowledge of the source of the money. But a creditor with knowledge of the source of money cannot apply it to a debt other than that secured by the bond so long as the bond remains unsatisfied. The other line of authorities holds that the payment must be applied to the extinguishment of the liability of the surety on the contract on which it is received."

Among the cases supporting the general principle above quoted may be cited the following: Alexander Lumber Co. v. Ætna Accident & Liability Co., 296 Ill. 500, 129 N. E. 871, 873; Crane Co. v. Pacific Heat & Power Co., 36 Wash. 95, 78 P. 460, 461; U. S. v. American Bonding & Trust Co. (C. C. A.) 89 F. 925; First Nat. Bank v. City Trust, Safe Deposit & Surety Co. (C. C. A.) 114 F. 529; Columbia Digger Co. v. Sparks (C. C. A.) 227 F. 780; McElrath & Rogers v. W. G. Kimmons & Sons, 146 Miss. 775, 112 So. 164, 680; Carolina Portland Cement Co. v. U. S. Fidelity & Guaranty Co., 18 La. App. 105, 137 So. 381; Standard Accident Ins. Co. v. Duval Lumber Co., 99 Fla. 525, 126 So. 643; Bross v. McNicholas, 66 Or. 42, 133 P. 782, 784, Ann. Cas. 1915B, 1272; Fawkes v. Curtis, 133 Or. 20, 286 P. 981; Trauth v. Voss, 231 Ky. 544, 21 S.W.(2d) 832; A. Y. McDonald Mfg. Co. v. Leverett, 203 Iowa, 1215, 211 N. W. 849; J. F. Kane & Co. v. F. R. Woodbury Lumber Co., 121 Wash. 149, 208 P. 1107; Maryland Casualty Co. v. Dupree, 223 Ala. 420, 136 So. 811; Sipes v. Ardmore Book & News Co., 138 Okl. 180, 280 P. 805; Gerlach v. North Texas & S. F. R. Co. (Tex. Civ. App.) 244 S. W. 662.

Many of the above-cited cases are almost identical in fact with the instant case. We shall quote from only a few of them. From the case of Crane Co. v. Pacific Heat & Power Co., supra, we quote: "We think, under both authority and right reasoning, that the indemnity company had an equitable right to have the money which was paid to the respondent by its principals on the bond applied to the liquidation of the debt for which the security was given. The Ætna Indemnity Company did not undertake to secure the payment to the respondent of any old claims which were then due and unsecured, or any claims other than the one which was the subject of the contract, viz., the Warren avenue school contract."

In Bross v. McNicholas, supra, the rule is stated in this language: "While the authorities are not in harmonious accord, we think that, as a general proposition, the surety cannot direct the application of payments made by the principal and the creditor, or either of them. However, this rule is applicable solely in those cases where the principal makes the payment from funds which are his own and are free from any equity in favor of the surety to have the money applied in payment of the debt of which the surety is liable, but where the specific money paid, or property delivered to the creditor, is the identical money or property for the payment and delivery of which the debtor and his surety obligated themselves by the contract and undertaking, the surety is not bound by an application of the money or property to some other debt for which the surety is not liable. In such cases the surety is equitably entitled to have the money paid, or the property delivered, applied to the payment of the debt or the liquidation of the contract for which he is liable."

The following language from the opinion in the case of Alexander Lumber Co. v. Ætna Accident & Liability Co., supra, is particularly applicable here: "Plaintiff in error having a special equity in the chemistry building fund by which it had a right to have payments by the contractors arising from that fund applied to the chemistry building account for materials, the effect of defendant in error's suit against plaintiff in error is to seek to collect a different debt from the one forming the basis of the contract of assurance in question here, and one for which, under the provisions of this bond, plaintiff in error is not in equity liable. The practical result of defendant in error's contention is that because plaintiff in error has contracted to assure to it the faithful performance of the contract of Freeman & Brooks to build the chemistry building and pay for the materials furnished therefor it must pay the debts of Freeman & Brooks to defendant in error which have no relation to the contract in question. A court of equity will not apply the general rule regarding application of payments when, from all the surrounding circumstances, to do so would work an injustice. Compound Lumber Co. v. Murphy, 169 Ill. 343, 48 N. E. 472. To hold that there was no duty on defendant in error, under the facts in this case, to ascertain what payments were made to it from funds derived from this contract and apply the same accordingly, would be to place in its hands the power to collect its poor accounts with the contractor from funds paid on this contract, and then compel the surety to pay for the material used in the construction of the building under the contract. Such a rule and such a contention is so inequitable and unfair as to shock the conscience of all fair-minded persons. The fair construction of this provision of the bond is that the surety thereon has a right to have payments to the materialman from funds derived from the building covered by the surety contract applied to the account for materials furnished for said building."

The application of the principles announced in the foregoing authorities to the facts in the instant case is obvious. Appellant seeks to have the surety company pay an old unsecured debt of doubtful value owing to it by Wallace. That is the practical effect of its suit. Before it received any payments from

Wallace, it made itself a party to the bond by filing its first claim for material with the county clerk. It received these payments with actual knowledge of their source. There was really no credit extended to Wallace for the materials used under this last contract. They were furnished to him at a time when appellant knew that he had no ability to pay, except from profits which he might earn on this particular contract, or future contracts. Appellant had knowledge that the United States Fidelity & Guaranty Company was surety for this undertaking, and took pains to fix its claim against such surety. The evidence will lead to no other conclusion than that no credit was extended to Wallace, but, on the contrary, appellant, from the beginning, intended to compel the surety to pay Wallace's old debts. We can well understand the feelings of the Supreme Court of Illinois, in considering a similar state of facts in the case of Alexander Lumber Co. v. Ætna Accident & Liability Co., supra, wherein it was contended that a surety could not complain of such conduct on the part of a materialman, which prompted that court to employ the strong language above quoted.

Appellant is not without authority supporting its contention here. The strongest case upholding that theory is Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410. That case is also reported in 41 A. L. R. 1291. In an extended case note following in 41 A. L. R. it is stated, on page 1298, that the decision is not supported by the weight of authority. Even if it were so supported in other jurisdictions, we would not feel disposed to follow it in the absence of a supporting opinion by our own Supreme Court, because the better reasoning to our minds leads to a contrary conclusion. This is particularly true under the provisions of our statute, article 5160, making materialmen parties to bonds of public contractors and requiring the retention by the obligee of a portion of the contract price for the protection of materialmen and laborers.

The judgment of the trial court will be affirmed.