FIRST NATIONAL BANK OF MUSCOGEE v. WILLIAM CAMPBELL ET AL.

Decided May 30, 1900.

**1. Homestead—Mechanic's Lien for Borrowed Money.**

The owner of a homestead lot who contracted with a party to erect for him a residence thereon can not charge the premises with a mechanic's lien in favor of another party to secure a loan of the money with which such owner pays the contractor for erecting the building, since the lender does not "perform labor or furnish material."

**2. Same—Case Distinguished.**

If, however, such latter party furnishes the money with which the material is furnished and the labor is paid for under his contract with the owner, he will be deemed to have furnished the material and performed the labor so as to entitle him to the lien given by the statute. Citing Downard v. Investment Company, 22 Texas Civil Appeals, 570, which is held not to be in conflict with the opinion in this case.

**3. Same—Assignee of Lien Note Acquires No Lien, When.**

One who, for value and before its maturity, takes a negotiable note purporting to be secured by a mechanic's lien on the homestead, is held to know that such security must arise from the statute, and takes the paper charged with notice of the facts of the transaction, and if such facts are insufficient to create the lien, none is acquired by the assignee.

APPEAL from Bexar. Tried below before Hon. J. L. CAMP.

*C. A. Keller* and *Mason Williams,* for appellant.

*Perry J. Lewis,* for appellees.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellant against William Campbell and wife upon a promissory note made by appellees on the 10th day of March, 1892, to Simon Gavagan, for the sum

of $2500, payable three years after date, with 9 per cent interest thereon per annum, payable semi-annually, and to foreclose an alleged mechanic's lien on a certain lot in the city of San Antonio, Texas.

The appellees alleged that the land upon which the alleged lien was sought to be foreclosed was, on the 10th day of March, 1892, the time when the note was executed, and when the lien is alleged to have been created, their homestead, and has ever since continued so to be, and that Gavagan at the time knew such facts. That he never furnished any material or labor for the erection of any house or improvements thereon, or built or caused to be built any improvements upon said premises. That the transaction between them and Gavagan was purely a loan of $2500; that they at the time of such loan entered into a valid contract with one Boelhauwe for the erection of a building and improvements for which said lien is claimed; that the alleged contract with Gavagan was merely a device and subterfuge to secure a loan of money, and was so understood and acted on by him. The trial of the case resulted in a judgment in favor of appellant against William Campbell for the amount due upon the note, and a denial of foreclosure of the lien.

The facts are substantially as follows: In 1891 the appellees acquired the lot upon which the lien is sought to be foreclosed for the purpose of making it their homestead and erecting a dwelling thereon. Early in February they had an architect to draw plans for the house, and advertised for bids for its construction according to the plans. The bid of Charles G. Boelhauwe was accepted by them, and a contract entered into by and between them and him for the erection of the building. During the month Boelhauwe commenced its construction, in the progresss of which the foundation of the building was laid. A written contract between appellees and Boelhauwe and the bond of the latter was prepared about the time his bid was accepted, but were not signed on account of the absence of one of the proposed bondsmen until March 12, 1892.

About March 10, 1892, after Boelhauwe had commenced the construction of the building, the appellee William Campbell, having been told by Gavagan that he wished to loan money on San Antonio real estate, solicited a loan of $2500 for the purpose of applying the same to the completion of the house upon the lot, which was in progress of construction. Gavagan then agreed to loan him the $2500 at 9 per cent interest, and to secure the same Campbell and his wife made a contract with him in writing, which was signed and duly acknowledged by the parties, whereby Gavagan agreed to furnish material and labor to the amount in value of $2500 for the construction and erection of a dwelling house upon said lot, which contract was on the 21st day of March, 1892, duly recorded in the records of mechanics' and builders' liens in Bexar County. At the time the contract was made, Campbell and wife executed and delivered to Gavagan the note sued on, which recites that it was executed to cover the costs of labor and material, etc., used in the construction and erection of the dwelling, which Gavagan had con-

tracted to build upon said lot. Gavagan loaned the money to Campbell in three installments, and paid the money in checks on the First National Bank of Muscogee. The checks were payable to appellees, and were by them deposited in a bank in San Antonio to their credit. Gavagan did not make any improvements whatever on the property, nor furnish any of the labor or material therefor. The money was all used to pay the contractor Boelhauwe for the labor and material performed and used by him in constructing the building under his contract. Boelhauwe did not know Gavagan, and never had any dealings with him about the building, but Boelhauwe, as the contractor, furnished the labor and material for the construction of the house and paid for it himself, though he was paid by appellees with the money procured by them from Gavagan.

In short, the evidence is incontrovertible that the transaction between William Campbell and Gavagan was merely a loan of money, and that the contract was drawn in the form of a builder's contract as a device to evade the constitutional exemption of a homestead. Afterwards, on the 15th day of November, 1895, before the maturity of the note, it was, together with the contract for mechanic's lien, given to secure it, assigned for a valuable consideration by indorsement by Gavagan to the appellant without actual notice on the part of the latter of the fact that the contract for the lien was made for the purpose of evading the constitutional inhibition of liens upon the homestead, or of the facts which show that the lien pretended to be created by said contract did not in fact exist.

*Opinion.*—The assignments of error complain of the ruling of the court on exceptions to the pleadings; of evidence admitted over appellant's objections; of certain portions of the court's general charge; and of the refusal of the court to give certain special instructions asked by appellant. The questions necessary for solution raised by the assignments may be reduced to two: (1) Can a party, when a building is in process of construction upon a homestead under a contract with another, with which he has no connection, by loan of money to the owners secure a builders' or mechanics' lien upon their homestead by a writing which purports to be such a contract as, if performed by him, would create such lien, when it is not intended either by him or the owners that he shall perform any of the labor, furnish any of the material, or do anything towards the construction of the building, though all the money loaned by him was used by the owners to pay the contractor who actually furnished the labor and material for the construction of the improvements? (2) If not, is the assignee, before maturity, of a negotiable note, given by the owners of the homestead to such a lender of the money, and of a contract purporting to be a builders' and mechanics' lien, in any better position to claim the existence of such lien than the original lender?

It is only when material is furnished, labor performed, erections or repairs made upon a homestead, if the owner thereof is a married man,

that a mechanic's or materialman's lien thereon can be fixed. To fix and secure such lien it is necessary for the person or persons who furnish the material or perform the labor, before such material is furnished or labor is performed, to make and enter into a contract in writing, setting forth the terms thereof, which shall be signed by the owner and his wife, and privily acknowledged by her as is required in making sales of a homestead. Rev. Stats., art. 3304. From this it is clear to our minds that no lien was created in favor of Gavagan upon appellees' homestead, and that to the first question a negative answer can only be given.

The principle that a bona fide assignee for value before maturity of a negotiable paper is not affected by any equities between the original parties has no application to mechanic's liens. Such a lien must exist before it can be assigned, and if the conditions of its existence are lacking, one who takes by assignment of the paper purporting to be such a lien is in no better attitude than his assignor who had nothing to assign, for an assignment can not bring into existence that which had no being before it was made. The second question, therefore, must likewise be answered in the negative, and the judgment of the District Court affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

In considering this motion we again reviewed all the evidence contained in the record, and are of the opinion that it fully sustains the conclusions of fact expressed in our original opinion. Though it may be controverted that the transaction between Campbell and Gavagan was merely a loan of money, and the agreement between them drawn in the form of a builder's contract as a device to evade the constitutional exemption of a homestead, still the evidence is amply sufficient to sustain the jury in finding that such was the nature of the transaction and the purpose of the written contract between the parties.

The right to a lien in favor of a mechanic or materialman is a creature of and purely dependent upon statute. Van Stone v. Manufacturing Co., 142 U. S., 128. To its existence it is necessary that there should be a performance and concurrence of all the conditions and acts prescribed by the statute. These statutory requisites are recited in our original opinion and need not be reiterated. The statute creating the lien is only for the benefit of persons performing the labor or furnishing the material under a contract made in accordance with the provisions prescribed. The law is not intended to protect those who lend money to the owner to pay laborers or materialmen, or make payment to them on the order of the owner of the building or otherwise. But it is not essential that one who has contracted in good faith in the manner prescribed by law to furnish the material and construct the building should actually do so in person. If he furnishes the money with which the material is purchased, and the labor is paid for under his contract with the owner, he will be deemed to have furnished the material and performed

the labor so as to entitle him to the lien given by the statute. This is the extent of our holding upon this question when the case was before us on a former appeal. 46 S. W. Rep., 845. There is no conflict between our opinions in this case, nor between the one to which this motion is directed and the opinion in the case of Downard v. Loan and Investment Co., 22 Texas Civil Appeals, 570.

While a claim secured or purporting to be secured by a mechanic's lien may be assigned, it carries no lien unless the lien has first been perfected by the mechanic or materialman in whose favor the right to the lien primarily exists. The right to the lien is in the mechanic, laborer, or materialman, and it is only such mechanic, laborer, or materialman that may perfect the lien; and it is only after the lien has been perfected, as in the case of any other lien, that it may be assigned. Jenckes v. Jenckes, 145 Ind., 624, 44 N. E. Rep., 633. One who takes the negotiable paper which purports to be secured by a mechanic's lien, knows that the purported security must arise from the statute, and, as to the lien claimed, takes the paper charged with the knowledge of all the facts surrounding the transaction between the original parties; and if such facts show that no lien was created, he can have none.

The motion is overruled.

*Overruled.*

Writ of error refused.