**FT. WORTH & D. C. RY. CO. v. READ BROS. & MONTGOMERY et al.**

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 1, 1913. Rehearing Denied March 1, 1913.)

1. RAILROADS (§ 189*) — FORECLOSURE OF LIENS—SUFFICIENCY OF EVIDENCE.

In an action against a railroad to foreclose a lien, evidence *held* to support jury's finding that the balance due a lienor represented only reasonable wages for himself and for the use of his teams and tools in the construction of the railroad; and that he made no profit over and above the reasonable value of his own and his employé's labor and the use of his teams and tools.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 622; Dec. Dig. § 189.*]

2. RAILROADS. (§ 159*)—LIENS FOR LABOR—PERSONS ENTITLED.

Under Rev. Civ. St. 1911, art. 5640, providing that laborers who have performed labor or work with tools, teams, or otherwise in the construction of any railroad, and to whom wages are due for such work or for the work of tools and teams thus employed, shall have a lien on the railroad for the amount so due, the fact that a lien claimant contracted with the general contractor to move dirt and rock at a specified price per cubic yard and clear land at a specified price per acre did not, of itself, render him a subcontractor rather than a laborer, or deprive him of his right to a lien; that being only the method employed to determine the price to be paid for the work.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 477, 486–504; Dec. Dig. § 159.*]

3. RAILROADS (§ 159*)—LIENS FOR LABOR—PERSONS ENTITLED.

Unde Rev. Civ. St. 1911, art. 5640, providing that laborers who perform labor or work with tools, teams, or otherwise in the construction of any railroad, and to whom wages are due for such work or for the work of tools or teams, shall have a lien on the railroad for the amount so due, a person who, while work was being done in the construction of a railroad by his employés and by the use of his teams and tools, worked in the blacksmith shop and procured supplies for the use of his men and teams and for the repair of his tools was entitled to a lien for such work, where it was necessary for the proper prosecution of the work on the grade.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 477, 486–504; Dec. Dig. § 159.*]

4. APPEAL AND ERROR (§ 1033*)—REVIEW—HARMLESS ERROR.

In an action to foreclose a lien on a railroad, if the evidence showed, as contended, that the work was finished October 6, 1907, at which time the unpaid balance therefor became due, the finding of the jury that such balance became due January 1, 1908, was error favorable to the railroad company, of which it could not complain.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

5. RAILROADS (§ 159*)—LIENS FOR LABOR—PERSONS ENTITLED.

Under Rev. Civ. St. 1911, art. 5640, providing that laborers who perform labor or

work with tools, teams, or otherwise in the construction of any railroad shall have a lien for any balance due for such work or for the work of tools or teams, a person who hired his teams and tools to the general contractor, and who neither worked with them, nor furnished any one to work with them, was not entitled to a lien.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 477, 486–504; Dec. Dig. § 159.*]

6. PAYMENT (§ 39*)—LIENS FOR LABOR—APPLICATION OF PAYMENTS.

Where payments were made and applied to lienable items before the lienor hired his teams to the contractor,. and a statement, showing the various payments, was accepted by the lienor, he could not subsequently apply such payments on the nonlienable items for the hire of his teams, in order that the balance due would represent lienable items.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 104–114; Dec. Dig. § 39.*]

7. APPEAL AND ERROR (§ 1056*)—FORECLOSURE OF LIENS—EVIDENCE.

Where the evidence showed conclusively, in a suit to foreclose a lien, that the only amount disallowed represented a nonlienable item, the exclusion of evidence offered by the lienor to show that the railroad had been indemnified against liens by the contractor, and that its defense was in fact made by the indemnitor, was not error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193; Dec. Dig. § 1056.*]

Appeal from District Court, Tarrant County; J. W. Sayne, Judge.

Action by Read Bros. & Montgomery and others against the Ft. Worth & Denver City Railway Company. From the judgment, defendant appeals. Affirmed.

See, also, 140 S. W. 111.

Spoonts, Thompson & Barwise and Harris, Harris & Young,· all of Ft. Worth, for appellant. J. A. Templeton, of Ft. Worth, for appellees.

DUNKLIN, J. The Ft. Worth & Denver City Railway Company has appealed from a judgment in favor of S. R. Bourgeois foreclosing an alleged lien upon a spur track belonging to appellant, under and by virtue of the provisions of article 5640, Revised Statutes 1911, for work performed with tools and teams upon the spur track.

The railway company let the contract for the construction of said spur track to Read Bros. & Montgomery, who employed Bourgeois to do the work upon which his claim for lien was predicated. The jury made findings in answer to 45 interrogatories submitted to them, consisting chiefly of questions of evidence rather than controlling issues in the case, and many of which are substantial duplicates of others, and these findings were supplemented by several additional findings by the trial judge. The suit was instituted by Read Bros. & Montgomery against the railway company to recover the balance due for the entire work done under the contract, and Bourgeois intervened, praying judgment against the plaintiffs for the balance of $1,-136.83, due him from the contractors, and for a lien to secure the same, upon the spur track, against the railway company for such balance.

At a previous trial judgment was rendered in favor of the intervener against the plaintiffs for $1,276, with a foreclosure of lien against the railway company for $1,179 of that amount. From that judgment, an appeal was prosecuted by the railway company to the Court of Civil Appeals at Texarkana, resulting in a reversal of the foreclosure against the railway company, but leaving the judgment in favor of the intervener against the plaintiffs undisturbed; no appeal having been prosecuted from that part of the judgment. The opinion rendered upon that appeal is reported in 140 S. W. 111.

The trial from which this appeal is perfected was between the intervener and the railway company alone. The jury found in favor of the intervener for the following items of account against the contractors, which were alleged in his petition:

| | |
|---|---:|
| Moving 6,000 yds. of dirt | $ 720 00 |
| 1,000 yds. of rock | 700 00 |
| Four teams with men and tools on miles 3 and 4 | 120 00 |
| Clearing and grubbing 2.87 acres of land on mile 4 at $30.00 per acre | 86 10 |
| Overhaul of dirt filling washout on mile 4. | 100 00 |
| Hire of 8 teams and tools for 44 days working on mile 9 at $1 per day per team | 352 00 |
| Tickets and freight charges | 25 41 |
| Groceries returned | 62 00 |
| | $2,165 51 |

It was proven beyond controversy that the item of $352 was for the hire of intervener's teams and tools by the contractors after intervener had completed the work undertaken by him and had discharged his employés, and that during the time the contractors used the teams and tools under this contract of hiring plaintiff did. not work with them; nor did he furnish any one to do so.

The jury found that the contractors paid intervener $1,092.58 for the work done by him on the spur track prior to the time he hired his teams to the contractors, leaving a balance of $1,072.93 owing upon that work, which became due intervener January 1, 1908; that out of the amount paid to intervener $714 was paid out to his employés in full for labor performed by them before they were discharged; and the evidence conclusively shows, with no finding of the jury to the contrary, that the items for tickets, freight, and groceries were in fact paid by the contractors and charged to intervener's account as advancements while the work done by intervener was in progress. The jury further found that the balance owing by the contractors represents only reasonable wages earned by the intervener by the use of his teams and tools, and by his own personal labor in working on the spur track and in superintending the work of his men

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

while they were working on the spur track; and that intervener realized no profit from the labor of his men in excess of the amount paid them for their services, nor from his own labor and the use of his teams and tools over and above the reasonable value thereof. The jury further found that, while said work was being done by his men and by the use of his teams and tools, intervener superintended the work as foreman and worked with his men, either by laboring thereon himself, or by working in the blacksmith shop and procuring supplies for the use of his men and teams, or by acting as foreman of his men and in superintending the work while they were engaged in constructing the grade; but the jury were unable to determine what portion of the time intervener worked with his men, teams, and tools directly upon the grade and how much of the time he devoted to working in his blacksmith shop, and in and about his camp and procuring necessary supplies for the use of his men and teams and for the repair of his tools. However, they further found that the work which intervener performed in and about the camp and while going after supplies for his men and teams, while they were engaged in working on the grade, was necessary for the proper prosecution of said work.

The trial court held that intervener was not entitled to a lien for the item of $352 for the hire of his teams, but deducted that item from $1,072.93, the balance found to be due, and rendered judgment in favor of the intervener for a lien on the spur track for $720.93, the difference between the two sums last named, with 6 per cent. interest thereon from January 1, 1908

[1] By its first assignment appellant insists that the evidence did not show such a state of facts as entitled intervener to a foreclosure of lien for any amount; and that the court erred in refusing a requested peremptory instruction directing a verdict for the defendant. Upon the former appeal the Court of Civil Appeals held, in effect, that, if appellee merely superintended the work and realized a profit from the work over and above the reasonable value of the labor employed and of the use of his teams and tools, he was a subcontractor, and not a laborer, within the meaning of the statute above referred to. Invoking that decision, appellant insists that it was conclusively shown that intervener was a subcontractor under Read Bros. & Montgomery, for that the evidence shows, without controversy, that plaintiff made a profit out of his work, which profit is included in the principal of the judgment rendered. The jury found that 42 days of work were performed upon the track from the time intervener began work until the time he hired his teams to the contractors; and that the reasonable market value of the use of the teams and tools used was $2.25 per day per team. The jury did not find

how many teams were employed; but intervener testified, without contradiction, that he used eight teams during the entire time the work was in progress. Intervener also testified that he had on an average of ten men employed, and paid them $1.75 per day each; and that his own services were worth $4 per day. With the foregoing figures as a basis for calculation, the use of his teams for the 42 days would be $756.00, value of services of his men would be $735, value of his own personal services $168, aggregating $1,659, which deducted from $1,726, the aggregate of the different amounts found by the jury for work on the track prior to the hiring of his teams, would leave a difference of $67.10, which would represent a possible profit realized by intervener upon that work; but in answer to two special issues the jury expressly found that intervener realized no profit upon that work. Intervener testified that the work consumed 53 days, instead of 42 days found by the jury. That testimony, in connection with his other testimony, referred to above, fully supports the finding by the jury that he realized no profit. Appellant has presented no assignment that the findings of the jury are conflicting, but the contention is that the evidence conclusively shows that there was a profit.

[2, 3] The fact that intervener contracted with Read Bros. & Montgomery to move dirt at 12 cents per cubic yard and rock at 7 cents per yard and to clear land at $30 per acre would not, of itself, render him a subcontractor rather than a laborer, as that is only the method employed by the parties to determine the price to be paid for the work. Railway Co. v. Daniels, 62 Tex. 73. As shown above, no part of the balance due is for the services of intervener's employés, nor for groceries, tickets, or freight charges, those items having already been discharged with the money advanced by the contractors; and, as no lien was given for the item of $352 for the hire of teams, the question to be determined is whether or not a lien was established for the balance of $720. This item was for the use of appellant's teams and tools and his own personal services, and the controlling issue is whether or not he worked with his teams and tools in such manner as to give him a lien therefor, under the provisions of article 5640, Revised Statutes 1911. As shown above, the jury found that during the entire time that the work performed by his hired men and teams was in progress intervener worked with them. The work done by him around the camp, of the character indicated, which was necessary to the prosecution of the work done by his hired men, we think, was work with his teams and tools the same as the other services performed by him directly on the track, such as driving the teams, holding the plow, and blasting rock. For the foregoing reasons, the first assignment is overruled.

And for the reasons indicated already there is no merit in the second assignment of error, in which the contention is made that there is no support in the evidence for the finding of the jury that intervener realized no profit from the labor of his hired men; nor in the seventh assignment of error presenting the proposition that there is no support in the evidence for the jury's finding that the balance due appellee represents only reasonable wages for himself and for the use of his teams and tools.

[4] By another assignment it is insisted that the evidence conclusively shows that the work done by intervener upon the track was finished October 6, 1907, at which time the unpaid balance for such work became due; and that the finding of the jury that such balance became due January 1, 1908, is without evidence to support it. If this was error, it was an error in appellant's favor and against the appellee. Hence this assignment is overruled.

From the conclusions already stated, it follows that there was no error in overruling the appellant's motion for a judgment in its favor upon the findings of the jury, as insisted by the third and fourth assignments of error; nor was such judgment excessive, as insisted by the fifth assignment of error.

[5] Appellee presents several cross-assignments of error, insisting that he was entitled to a statutory lien for the entire balance found to be due him; and that the court erred in denying a lien for the item of $352 for the hire of his teams and tools, as noted already. As it is undisputed that intervener did not work with his teams and tools while they were so hired, there was no lien in his favor for that item. East Tex. Ry. Co. v. Foley, 30 Tex. Civ. App. 129, 69 S. W. 1030.

In answer to two interrogatories propounded to them, the jury found that the contractors made the payments to appellee without reference to how they were to be applied, and without designating to what part of intervener's account against them the payments should be applied. But in answer to other interrogatories they found that the full sum of $1,092.58 paid by the contractors was paid for work done by appellee upon the spur track to the time he discharged his employés and hired his teams to the contractors. No assignment is presented to these apparently conflicting findings.

[6] Intervener insists that he had the right to apply, and did apply the payments made by the contractors to the satisfaction of the item of $352, thus leaving the balance found by the jury to represent a claim for his labor and the use of his teams and tools on the work done before his teams were hired to the contractors. The payments made by the contractors were made during the months of August, September, and October, and according to testimony of the intervener himself payments made to his employés for their services were made by the contractors direct, who also paid, as advancements to appellee, the various items shown in the accounts submitted to him by the contractors. Furthermore, as shown by the findings of the trial judge, the truth of which is not challenged, intervener, during the month of November, 1907, received a statement from the contractors, showing the various items for which the payment by them had been made; and that intervener accepted the same as correct, and made no claim of right to apply those payments differently until several months thereafter, when he was advised by his attorney, just before the institution of this suit, that he had the legal right to apply $352 of such payments to the satisfaction of the item for the hire of his teams and tools to the contractors. It thus appears from the undisputed evidence that the various payments made by the contractors to intervener were applied upon the debt that the contractors owed him for the work done before the contractors hired the teams. Certainly a creditor had not the privilege of applying a payment made by his debtor to a debt which did not exist at the time the payment was made, but which was later incurred, in the absence of some special agreement to that effect; and there is no evidence in the record in this case of any such understanding. Hence the first four cross-assignments of error are overruled.

[7] As the evidence shows conclusively that the $352 item for the hire of teams has not been paid, but is included in the balance found to be due by the contractors, it follows that at all events there was no error in excluding the testimony offered by appellee to show that the contractors executed a bond to appellant to indemnify it against all liens that might be fixed for any work done upon the spur track by any employé of the contractors, and that the defense urged to intervener's suit was in fact made by the indemnitor rather than by the appellant; and hence no harm could result to the appellant if the payments were applied in part as a credit for the hire of his teams and tools, as proposed by appellee.

The judgment is in all things affirmed.