## GERLACH v. NORTH TEXAS & S. F. RY. CO. et al. (No. 1907.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 25, 1922.)

1. **Judgment ⟨key⟩106(1)—Should be rendered by default against defendant not answering.**

If a defendant, against whom there was evidence sufficient to warrant a judgment, failed to answer, judgment should have been rendered against him by default.

2. **Appeal and error ⟨key⟩1175(1)—Judgment not rendered against defendant, where record does not show service or answer.**

Though there was evidence sufficient to warrant a judgment against one defendant, the appellate court cannot render such judgment on appeal, where there is no answer by him in the record, and nothing to show that he was served.

3. **Railroads ⟨key⟩159(9)—Time checks for labor, creating lien, assignable.**

Time checks for labor on a railroad performed for a contractor, and accounts for wages, creating laborer's liens under Rev. St. arts. 5640, 5641, are assignable.

4. **Bills and notes ⟨key⟩17—Orders for wages drawn on person financing subcontractor held not "time checks," but bills of exchange.**

Where plaintiff, who financed a railway subcontractor and took an assignment in the name of his brother for moneys coming due the subcontractor, had drafts or checks for wages guaranteed by him drawn on a mercantile company with whom he had deposited money for their payment, such drafts or checks were not properly time checks, but in effect drafts or bills of exchange, as a "time check" is a certificate, signed by a master mechanic or other person in charge of laborers, reciting the amount due the laborer for labor for a specified time (quoting Words and Phrases, First and Second Series, Time Check).

5. **Bills and notes ⟨key⟩493(1)—Presumed that draft given for debt due from drawer to payee.**

The law presumes that drafts or bills of exchange given railway laborers in payment of their wages were given for some debt due from the drawer to the payee.

6. **Bills and notes ⟨key⟩499—Draft in hands of drawee is presumptive evidence of payment to holder.**

A draft in the hands of the drawee is presumptive evidence that the drawee paid its amount to the holder.

7. **Bills and notes ⟨key⟩440—Drawee not holder who could reissue, and payment by it extinguishes the instrument.**

Where plaintiff, who was financing a railway subcontractor, had drafts guaranteed by him drawn on a mercantile company, with whom he had placed money for their payment, the mercantile company, on paying the drafts, was not a holder thereof in due course, who could reissue them, so as to create a liability against the drawer or prior indorsers, but, when it paid them, they were extinguished as negotiable instruments.

8. **Railroads ⟨key⟩175—Laborer's lien held extinguished.**

Where plaintiff, who was financing a railway subcontractor, had drafts guaranteed by him drawn in favor of laborers on a mercantile company, with which he had placed money for their payment, the cashing of the drafts extinguished the laborer's lien, and there was no assignment thereof to the mercantile company, or to plaintiff, to whom the mercantile company indorsed the drafts without recourse.

9. **Railroads ⟨key⟩159(9)—Laborer only has lien.**

Only the laborers employed by a railway company had a lien for their labor, and the contractor had no such lien.

10. **Subrogation ⟨key⟩23(8)—One furnishing money for payment of laborers under agreement with subcontractor held not subrogated to laborer's lien.**

Where plaintiff agreed with a railway subcontractor to finance his contract by buying laborer's claims, but instead placed money with a mercantile company and had drafts drawn on it, there were no such equities in the case as gave plaintiff the right of equitable subrogation to the lien of the laborers against the railway property, especially where the railroad had paid the subcontractor all that was due on the contract.

11. **Subrogation ⟨key⟩23(8)—When one financing subcontractor applied money received under contracts on other debts, he could not ask subrogation to laborer's lien.**

Where one financing a railway subcontractor, and taking an assignment in the name of his brother of all moneys coming due the contractor, applied money so received on merchandise accounts due mercantile companies in which he and his brother were interested, in preference to his claim for moneys advanced to pay the claims of laborers, he was in no position to ask equity to aid him by declaring him subrogated to the laborers' liens.

Appeal from District Court, Hemphill County; W. R. Ewing, Judge.

Action by George Gerlach against the North Texas & Santa Fé Railway Company and others. From a judgment for defendants, plaintiff appeals. Affirmed in part, and reversed and remanded in part.

Frank Willis, of Canadian, and H. L. Adkins, of Amarillo, for appellant.

H. E. Hoover, of Canadian, E. C. Gray, of Higgins, and W. S. Jenks, of Ottawa, Kan., for appellees.

HUFF, C. J. George Gerlach, appellant, sued A. L. Cook, L. J. Smith Construction Company, a corporation, the North Texas & Santa Fé Railway Company, and J. P. Harrington to recover the sum of $1,984.62. He alleged that he was entitled to recover the sum of money which was represented by cer-

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tain time checks, issued for labor performed in the construction of a line of railway in Lipscomb county, Tex., and in the preparation of a grade therefor for the North Texas & Santa Fé Railway Company; that neither the railway company nor any of the appellees have ever paid said laborers; that appellant is the owner of the checks, having purchased same for a valuable consideration. He prays for judgment against the appellees or such of them as may be found liable for the amount sued for, with interest, and that the lien provided for by articles 5640 and 5641, Revised Civil Statutes of Texas, be decreed to exist, and that the same be foreclosed. It is also alleged in the original petition that the railway company was constructing its roads through its agents, the other named defendants, but in his first supplemental petition he alleges that, if he is mistaken as to the agency of the Smith Construction Company, Cook, Allen, or Harrington, for the railroad, then he says the laborers, etc., performed such labor in the construction of said railway at the instance and request of the railway company, acting through said parties, and that the railway company accepted the fruits and benefits of the labor, etc. A list of the laborers and the amount of the certificates are attached to the petition as an exhibit.

We find in the record answers filed by all the defendants except Harrington. The railway company answered in effect general denial, and that neither of the other defendants, separately or collectively, acted as its agent to contract for labor or material on its account. It admits it is a railway corporation, and was engaged in the construction and building of a line of railway from Shattuck, in the state of Oklahoma, to Spearman, in the county of Hansford, state of Texas, but denies that the other named defendants were its agents; that in the construction of the road it entered into a contract with L. J. Smith Construction Company, at a price mentioned in the contract, for the construction of the road, which was duly recorded; that the contractors executed a bond for the faithful performance of the contract, which contract provides that the contractor would pay for all labor, etc., used or necessary in the construction of said railway; that the railway company has paid the contractors the full amount due under the contract. The L. J. Smith Construction Company answered by general denial, and adopts as far as same may be applicable the answer of the railway company. It admits it is a corporation, and that under its contract it agreed to complete the railroad and pay all labor claims, and that it entered into a bond to secure performance of its contract. It alleged that it subcontracted a portion of the work to the defendant, A. L. Cook, who thereafter subcontracted a portion of said work to J. P. Harrington. A. L. Cook answered by general denial as to the original petition, and admits that he contracted to do the work mentioned in plaintiff's petition under the original contractor, L. J. Smith Construction Company, and that he subcontracted the work to J. P. Harrington; that Harrington thereafter assigned the same to John Gerlach; that for a consideration agreed upon between Harrington and George Gerlach appellant agreed to finance the work to be done by Harrington, and to pay all bills for work, labor, material, and supplies used on the grading contract. For that purpose appellant guaranteed the bills paid by Gerlach-Hopkins Mercantile Company; that all checks were paid by the mercantile company under said guaranty; that the checks were paid by the company out of money furnished by appellant for that purpose. At this time we will not set out further Cook's plea. John Gerlach was made a party by order of the court upon the allegation by Cook that Harrington assigned to him the contract. He in effect alleges the assignment only of moneys accumulated by reason of labor performed. All parties, plaintiffs and defendants, answering, file sworn answers denying partnership or agency, where they are charged as such.

The trial court instructed a verdict for the defendants, and judgment was entered on the verdict so instructed for the defendants. In the trial of the case the contract alleged by the Smith Construction Company, the contract with Cook, the one with Harrington, or the assignment to John Gerlach were not offered in evidence. The statement of facts, however, shows that oral testimony was received as to the existence of such contracts, but the terms are not specifically set out. It is shown that Harrington was a subcontractor under Cook on miles 12 and 13 of the railroad line, in Lipscomb county, Tex., which was graded by Harrington as subcontractor under Cook, and for such work so contracted Cook issued warrants or checks for such construction, under the subcontract. These appear to have been turned over under the assignment to John Gerlach, or the mercantile company, and the money received thereon applied to certain merchandise accounts against Harrington for provisions, feed, and the like, probably used by Harrington in prosecuting the work. The appellant, George Gerlach, was president of the Gerlach-Hopkins Mercantile Company, Woodward, Okl., and John J. Gerlach was president of the Gerlach Mercantile Company, at Canadian, Tex. The two are brothers, and they and their sister own a good portion of the two concerns. Appellant caused Harrington to assign his contract with Cook to his brother, John Gerlach. This was done at the time without John Gerlach's knowledge. The appellant states that the assignment required

Harrington to turn over to John Gerlach all the estimates issued him on the contract. The assignment was made at appellant's instance, and as part of the arrangement made by him with Harrington, the subcontractor. The appellant testified:

That he was owner of Exhibits Nos. 1 to 135, inclusive, and 148 to 172, inclusive; that he paid value for the checks. "In accordance with my instruction, the Gerlach Mercantile Company and the Gerlach-Hopkins Company purchased these time checks for me. Neither the North Texas & Santa F6 Railway Company and L. J. Smith Construction Company, nor A. L. Cook, nor J. P. Harrington, have never paid me the sum of money that I paid out for these checks, or any part of them. I have not received the money I paid out for these checks that have been identified here as Plaintiff's Exhibits."

The form of the checks identified as Plaintiff's Exhibits 1 to 135, is as follows:

"First National Bank, 85—511.

"Member Federal Reserve Bank No. 11.

"Customer's Draft.

"No. 81. Canadian, Texas, March 19, 1917.

"Pay to the order of Dan Hartnitt, $100.00, one hundred dollars, value received, and charge to account of

"[Signed] J. P. Harrington.

"O. K. W. D. Rathjen.

"To Gerlach-Hopkins Mercantile Company, Woodward, Oklahoma.

"For labor done on work on . Camps 12 and 13."

Indorsements on back of check:

"Geo. Gerlach, by W. D. Rathjen.

"Dan Hartnitt,

"J. W. Brazelton.

"Pay to Geo. Gerlach, without recourse on us. Gerlach-Hopkins Merc. Co., by J. H. Hopkins, V. P."

Then follow, on the back of said checks, various indorsements of collection agency banks.

The statement of facts recites:

"Exhibits bearing above numbers are checks or drafts of same form as set out in Plaintiff's Exhibit No. 1, page 77. All checks or drafts comprised in these exhibits are signed: 'J. P. Harrington. O. K. W. D. Rathjen'—and to Gerlach-Hopkins Mercantile Company, Woodward, Oklahoma. In addition to state bank indorsements referred to above, each are indorsed on the back, 'Geo. Gerlach, by W. D. Rathjen,' and 'Pay to Geo. Gerlach, without recourse on us. Gerlach Mercantile Company, by J. H. Hopkins, Vice President.' Payees' indorsements are shown below. Each check or draft bearing on its face the words in substance for labor on miles 12 and 13, except as may be shown in the tabulated statement of the checks in question. Checks identified as Plaintiff's Exhibits Nos. 148 to 172, inclusive, are substantially the same as the above set out, except they are addressed to the Gerlach Mercantile Company and signed 'per E. A. Nippold.'"

The evidence indicates that Rathjen and Nippold were employed by Harrington as timekeepers and that they were so employed at the instance of George Gerlach or by agreement between him and Harrington. Rathjen and Nippold were each authorized to draw checks and sign Gerlach's and Harrington's names thereto. Mr. Hopkins, the vice president of the Gerlach-Hopkins Mercantile Company, testified that, before the checks were presented to Gerlach-Hopkins Mercantile Company, Gerlach made arrangements with him for handling them. The arrangements were that he would purchase the checks for Gerlach, and they used Gerlach's money for that purpose, and did not use the money belonging to the mercantile company. They took up the checks only as he supplied the money. . He thought that Gerlach had $3,000 or $4,000 with them at that time. Gerlach gave instructions that, when the checks were presented, they were to purchase them for him, and he did that, and then he indorsed the checks over to George Gerlach. The Gerlach-Hopkins Company did not themselves pay the time checks, but purchased them for Mr. Gerlach with his money, and that was the reason that he wrote on them "without recourse." Mr. Rathjen testified in effect that he was the timekeeper, and that he issued the various checks mentioned in the petition set out to laborers for labor done on miles 12 and 13, in Lipscomb county, for Harrington. Nippold testified that after he went on the work he issued the checks for labor, as did Rathjen. They were each authorized by the appellant, George Gerlach, to sign his name or indorse the checks by him.

The evidence upon cross-examination of these witnesses suggests they were not all issued for labor performed by the laborers in the construction of the roadbed for the railway company, and some of the items may have been for indebtedness due by Harrington which would not be a lien under the statutes. On cross-examination Mr. Hopkins testified that Geo. Gerlach was furnishing the money to pay the drafts and told him he was getting 10 per cent. on these payments; that the 10 per cent. was to come off of the men who did the work. Appellant was to get 10 per cent. discount for furnishing money to pay them—meaning the time checks—and when he took one he did so for George Gerlach, and that he had the money there to take them off his hands. He also admitted that George Gerlach wrote the Mercantile Company:

"Please take care of these drafts as cash items. J. P. Harrington is to pay 10 per cent. interest on all this money advanced to him, which is to be charged against his account monthly. John J. Gerlach also holds orders for all the Harrington work. There need be no charge in this end of the game. When the estimate for this work comes in, you will get

your money. Harrington is to pay us the next morning for all grain and all feed which I have advanced for him at Canadian and Higgins."

He further testified that, when the money came in on Harrington's estimates, they applied it to Harrington's account. They applied it to the account, and not to taking up the time checks, by direction from the plaintiff, George Gerlach; that he was not directed to so apply the money received upon the estimates by either of the defendants, the railroad or the other contractors. Money which Mr. Cook paid in there on the estimates for the work done by Harrington they applied to J. P. Harrington's account; that if it had been applied to the labor account he thought it would have paid and extinguished it; that there was enough money put there by Cook to pay for all the labor. This witness further testified:

"We did not pay for George Gerlach's men who actually did the labor. The checks came through the bank. They were nearly always cashed at the Shattuck Bank. The fellow who did the work got his pay from the bank; the bank paid it. As to the bank then paying the labor claims, I will state I do not know about it. They were the first ones that paid this check, of course. The laborers had their money for their labor possibly four or five days before the drafts came to our bank, or before we paid them. * * * As to whether a single man who had done labor up there came to us and sold his checks to us for George Gerlach, will state I do not think they knew they were selling to George Gerlach. I do not think there were any of these drafts coming into our office except through the mail."

He testified that Harrington had no account with them except for merchandise; that time checks were carried in George Gerlach's name, because Gerlach was furnishing the money to pay them off. The checks issued by Nippold on the Canadian Company were so issued at the instance of George Gerlach, because he stated his deposit with the Woodward Company had been exhausted, and that he made arrangements with the Canadian house to pay the checks so presented.

The appellant, George Gerlach, upon cross-examination, stated that he made arrangements with Harrington, upon Harrington coming to him, to furnish money to pay the laborers. He stated that it was a proposition that he did not think much of. Harrington asked him if he did not know that a time check issued for labor on a road had to be paid, and that if he could get the time checks bought by appellant that he could make a lot of money out of them. Gerlach advised with an attorney in reference to the matter, who advised him that he would be safe in buying them if they would get a timekeeper to keep track of the time. He admitted that not a single man sold him directly his time check; that the time checks were delivered under agreement with Harrington that he was to buy them; that he never made arrangements with any of the laborers to purchase the checks. He admitted that he wrote Harrington as follows:

"I have arranged to finance this business under the following conditions: Mr. W. D. Rathjen, of Canadian, will keep all books and make all arrangements. He will issue all checks for all wages. Mr. Rathjen represents me, and he must be treated with the courtesy due him in handling his work. * * * Mr. Rathjen will O. K. all orders for merchandise or all accounts which are drawn against Gerlach-Hopkins Mercantile Co., Shattuck, Okl. These checks will be signed on their face, 'J. P. Harrington.' Underneath this signature will appear signed, 'O. K. W. D. Rathjen.' Then on the back of these checks will appear in writing, 'Geo. Gerlach, by W. D. Rathjen.' Then the face of the check must state what the check was issued for."

He admitted that he wrote Gerlach-Hopkins Mercantile Company a letter, in which he told them how these checks would be drawn and indorsed, and asked them to take care of them, and then advised them that they would be paid out of the estimates Harrington had on his contract, which had been assigned to John J. Gerlach. He admitted that he wrote the Mercantile Company to care for all the checks as cash items, and advised them that J. P. Harrington was to pay 10 per cent. on all of the money advanced by him. He admitted that this referred to labor checks. The appellant admitted the reason he put up the money was because of the agreement with Harrington. The agreement was first to discount the checks 10 per cent., but the men would not stand for the discount, and that he and Harrington agreed that Harrington should pay him 10 per cent. on the money from the time the checks were drawn. He made no agreement with the laborers to assign their claims to him. All the agreement he had was with Harrington, the contractor.

Without setting out further the evidence, we believe the evidence conclusively establishes: (1) That appellant agreed to finance Harrington, upon drawing the drafts as directed, especially as to paying for the labor on the road. (2) That the consideration for advancing the money was 10 per cent. thereon from the time the checks were drawn. (3) He took an assignment of all the money due Harrington under his contract with Cook in the name of his brother, which was sufficient to pay the laborers. (4) That under his direction the mercantile companies, of which he was a member, and his brother, John, applied the money paid Harrington on the contract to merchandise account due such company by Harrington. (5) The drafts, when issued to the respective laborers, were the original obligation of appellant to them on

the check; that he was as to them a guarantor or surety thereof under his agreement with Harrington. (6) That neither of the laborers knew of the agreement between appellant and Harrington, or assigned to them their account against the contractor for labor; that the drafts are not in fact time checks within the meaning of that term, but were drafts or checks in payment of the accounts out of money placed with the mercantile company to take them up, under an agreement with Harrington to pay 10 per cent. upon the amount so advanced. The laborers, nor either of them, assigned or agreed to assign their claim to appellant at any time.

The appellant presents several propositions, which may be summarized as follows: (1) That as he paid the money for Harrington, and had not been repaid, he was entitled to a judgment against Harrington. (2) That the checks for labor constituted a laborer's lien on the railroad, and the jury should have been permitted to determine whether such drafts or time checks were issued in settlement of labor actually performed. (3) The jury should have been permitted to determine whether the manner of payment was intended as a purchase of such time checks. The appellant asked that special issues be submitted to the jury to ascertain what amount of the checks issued were for labor and the intent of the parties in making the arrangements to pay the checks.

[1, 2] We believe the evidence sufficient to show that the money advanced to Harrington to pay the checks by appellant has not been repaid, and that appellant is entitled to a judgment against Harrington for the sum represented by them. The court should have rendered judgment against Harrington, if he failed to answer, by default. However, the judgment recites all parties appeared, etc.; but both parties in this court treat the question as if Harrington had not answered, and we find no answer of Harrington in the record. If he was served, there is nothing in the record to show service. We cannot, as we conceive the matter, render judgment against Harrington on this appeal, and as to him we think the judgment should be reversed. We believe it will not be necessary for us to discuss the question raised by appellee; that is, that Harrington was sued as the agent of the railway company in employing laborers, and therefore he is not personally liable for his principal's obligation. The supplemental petition of Gerlach pleads alternative relationship, and the entire case seems to have been tried on the theory that Harrington was a subcontractor. We believe, under the record, the case should be reversed as to appellant's cause of action against Harrington on his personal obligation to appellant.

[3] The evidence is sufficient to present the issue that the parties to whom the checks were made payable were laborers on the railroad of the North Texas & Santa Fé Railway Company while it was in course of construction, and at least a part of the claims were for such labor as would create a laborer's lien under articles 5640 and 5641, R. C. S. Hales v. San Antonio, etc., R. Co. (Tex. Sup.) 238 S. W. 1106; Railway Co. v. Daniels, 62 Tex. 70; Railway Co. v. Read Bros. (Tex. Civ. App.) 140 S. W. 111; Railway Co. v. Read Bros. (Tex. Civ. App.) 154 S. W. 1027. Time checks for labor on a railroad, performed for a contractor, and accounts for wages, are assignable. Railway Company v. Dorman (Tex. Civ. App.) 62 S. W. 1086; Railway Co. v. Rucker, 59 Tex. 587; Railway Co. v. McCaughey, 62 Tex. 271; W. & W. §§ 160 and 470.

[4-7] The drafts or checks, drawn by Harrington, payable to the laborers, are not properly time checks, but were issued in payment of the amount due the payees therein.

"A time check has been defined as a certificate, signed by a master mechanic or other person in charge of laborers, reciting the amount due to the laborer for labor for a specified time." 8 Words and Phrases, 6974.

"A time check issued by a contractor or his foreman to a laborer, containing a memorandum of the time of labor and amount he is entitled to receive, is the evidence or symbol of his claim for such labor." 4 Words and Phrases, Second Series, 920.

The instruments given the laborers are in effect drafts or bills of exchange. They are unconditional written orders upon a mercantile company, drawn by Harrington, guaranteed by appellant at the time of their issuance, directing the company to pay to the order of the laborer the sum of money therein named. When paid by the drawee, they amounted to receipt of payment. The law presumes they were given for some debt due the drawer to the payee, and the facts in this case conclusively show they were so given. While in the hands of the drawee the draft is presumptive evidence that the drawee paid the amount of the check to the holder. We do not believe that the mercantile company was a holder of the checks in due course, such as it could reissue, so as to create a liability against the drawer or prior indorsers. When the check was presented for payment, no negotiation was necessary, or had; when paid, this extinguished the instrument as a negotiable instrument. Aurora State Bank v. Hayes-Eames, etc., Co., 88 Neb. 187, 129 N. W. 279; Brander v. Phillips, 16 Pet. 121, 10 L. Ed. 909.

[8, 9] In this case the indorsement to appellant by the mercantile company should have the effect of showing only a payment out of the funds advanced for the drawer to meet its payment. It did not assign the laborer's debt to appellant or to the mercantile company, for when the debt due the laborer

was paid by cashing the draft, it extinguished, not only the debt, but the lien given by law to secure it on the railroad's property. The laborer was the only one who had the lien; the contractor had none.

The facts in this case conclusively show there was no assignment by the laborers of their debt and lien to secure it to appellant. Whatever dealing there was, the contractor and appellant negotiated it. It simply amounted to appellant furnishing money to pay the laborer before any labor was performed, or lien fixed by statute, or steps taken by the laborer or any assignee of theirs. to fix it.

"To create an equitable assignment, it must have been purchased from the creditor for a consideration satisfactory to himself."

Again:

"To constitute an equitable assignment, * * * as well as a legal one, the assignor must be a party. The difference is in the form and manner of affecting the transfer, not in the party who must expressly or impliedly make it." Texas & St. L. R. R. Co. v. McCaughey, 62 Tex. 271.

The above case was one where, as in this, the contractor, without consulting the laborers, attempted to assign their debt and lien. In the case of Hess v. Turney (Tex. Civ. App.) 207 S. W. 171, (3), the court said:

"The contractors, at the time they borrowed the money, represented to the bank that they needed it to pay wages due laborers. This was true, and the money was used for that purpose. The laborers, however, were not parties to this transaction. When they were paid, their debt was extinguished. The transaction did not constitute an equitable assignment of their debts, and did not subrogate the bank to their claim against appellant. I. & G. N. Ry. Co. v. Concrete Investment Co., 201 S. W. 723; Lyon Bonding Co. v. Bank, 194 S. W. 1012; Bank v. Corse, 133 Kan. 720, 182 S. W. 917; Morgan's S. S. Co. v. Railway Co., 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625; Malone v. Kaufman, 38 Tex. 455."

[10] Appellant alleges only an assignment. He did not seek to recover on subrogation. We doubt if the contractor can agree with the lender of money to him that he should be subrogated to a lien against the railway property to pay his debt, especially as in this case, where the railroad paid the contractor all that was due on the contract. We do not think the evidence establishes subrogation by agreement between the contractor and appellant. The agreement seems to have been that appellant would buy the laborer's claim. This he did not do, but he furnished money to pay the claims. There are no such equities in this case, in our judgment, as will give the right of equitable subrogation. Bank of Commerce v. Lawrence County, 80 Ark. 197, 96 S. W. 749, 117 Am. St. Rep. 85, 10 Ann. Cas. 211; Valley

Pine Lumber Co. v. Hodgens, 80 Ark. 516, 97 S. W. 682; First Nat. Bank v. Campbell, 24 Tex. Civ. App. 160, 58 S. W. 628; 1 Jones on Liens, § 73.

[11] The appellee contends, since there was sufficient money paid by the railroad company to pay the laborers under Harrington's contract, and in fact all that was due thereon, and it being admitted that under appellant's direction it was applied to other debts than the secured ones without direction from the appellee railway company, that equity will apply the money to the debts secured by a lien on its property. In this case the appellant took an assignment from Harrington to all moneys coming to him under his contract in the name of John Gerlach, and directed the payment to be made on merchandise accounts due the two mercantile companies, in which appellant was interested, in preference to his claim by virtue of advancing money on the laborers' claims. We do not at this time determine whether the rule would require the application of the payments to the secured claim. However, authorities in this state would indicate that appellant may be required to so apply the money paid to that of the lien debt. 30 Cyc. 1237 (f), 1240 (3); also Simkins on Equity, p. 841; Paschall v. Pioneer, etc., 19 Tex. Civ. App. 102, 47 S. W. 98. It has been held contractors paying money received under a building contract upon other debts than for material would not be permitted so to apply as to establish the liability of sureties on the contractors' bond, but the application would be made upon the material account for the building. United States v. American Bonding Co., 89 Fed. 925, 32 C. C. A. 420.

In this instance the railroad property stood as security to the laborers' wages, and to permit appellant to procure a fund paid to discharge that indebtedness and apply to other accounts would, it seems to us, be a fraud on the railroad, whether intended as such or not. Such conduct, it seems to us, will defeat subrogation to a laborer's lien on the railway. It was the evident purpose, in procuring an assignment from the contractor of all moneys due under the contract, to secure the payment of the amount furnished to pay the laborers. When the appellant permitted or directed the proceeds under this contract so assigned to be applied upon other debts, he is in no position to invoke equity to aid him by declaring a subrogation to the laborer's lien. When he voluntarily surrendered the money in his hands to secure him on his advances to other unsecured debts, he defeated, we think, his right of subrogation to the lien. He should not be permitted to waive his legal right to the funds to pay the advances made by him, in order that he might subject the railway to their payments upon the theory of subro-

gation. ' The railroad and laborers were not parties to the agreement between appellant and Harrington, and should not suffer because there was not enough money due Harrington to pay his debt due the mercantile company and appellant for advances to pay the laborers. We believe the case should be affirmed as to all of the appellees, except as to Harrington.

The judgment will be affirmed, except as to Harrington, and as to him only the judgment will be reversed, and the cause remanded.